853 P.2d 722

**V.P. CLARENCE COMPANY, a Texas corporation, Plaintiff–Appellant,**

v.

**Henry A. COLGATE, Maureen A. McGuinness and Henry A. Colgate d/b/a Colgate Properties, Defendants–Appellees.**

**No. 20623.**

Supreme Court of New Mexico.

May 5, 1993.

Kemp, Smith, Duncan & Hammond, P.C., John P. Eastham, Albuquerque, for plaintiff-appellant.

Eaves, Bardacke & Baugh, P.A., John M. Eaves, Albuquerque, for defendants-appellees.

## OPINION

FROST, Justice.

This appeal requires us to determine whether a Texas loan brokerage company violated the registration requirement of the New Mexico Mortgage Loan Company and Loan Broker Act, NMSA 1978, Sections 58–21–1 to –27 (Repl.Pamp.1991),[1] by providing loan brokerage services to individuals in New Mexico without a registration certificate. Plaintiff-appellant V.P. Clarence Company ("Clarence"), a loan brokerage firm without a New Mexico registration certificate under the Loan Broker Act, sued defendants-appellees Henry Colgate and Maureen McGuinness (collectively "Colgate"), New Mexico residents doing business in New Mexico as Colgate Properties, to recover brokerage fees allegedly owed for services rendered. The New Mexico district court dismissed Clarence's claim for failure to comply with the Act's registration requirement, Section 58–21–3. Because we find that Clarence was not required to obtain a registration certificate or to plead compliance with or exemption from the Act, we reverse and remand for proceedings consistent with this decision.

### Standard of Review

■ This matter was presented to the trial court as a Rule 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *See* SCRA 1986, 1–012(B)(6) (Repl.Pamp.1992). In addition to briefs submitted by the parties on the motion before the district court, Clarence submitted an affidavit of its president, Kenneth Clarence. Colgate did not submit affidavits or other evidence to oppose the Clarence affidavit or to support the factual assertions made in its briefs. Because the trial court considered matters outside the pleadings, this action must be treated as an appeal of the entry of summary judgment. SCRA 1–012(B); *Graff v. Glennen*, 106 N.M. 668, 668, 748 P.2d 511, 511 (1988). The applicable standard of review, therefore, is that for summary judgment, and not the 12(B)(6) standard of accepting all well-pleaded facts as true and determining whether a claim has been stated upon which relief can be granted based solely on the pleadings. *Graff*, 106 N.M. at 668, 748 P.2d at 511. We also note that, although relied upon to an extent by the parties, the briefs and arguments of counsel are not evidence upon which a trial court can rely in a summary judgment proceeding. *See Archuleta v. Goldman*, 107 N.M. 547, 551, 761 P.2d 425, 429 (Ct.App.) (stating that for purposes of establishing a dispute of material fact in summary judgment proceedings, statements in unsworn briefs are not evidence), *cert. denied*, 105 N.M. 689, 736 P.2d 494 (1987); *Trujillo v. Puro*, 101 N.M. 408, 411, 683 P.2d 963, 966 (Ct.App.) (stating that arguments of counsel are not evidence for the purpose of summary judgment), *cert. denied*, 101 N.M. 362, 683 P.2d 44 (1984).

### Facts

In February 1991, Clarence and Colgate executed an engagement letter authorizing Clarence to obtain for Colgate a mortgage loan of 4.7 million dollars secured by the BLM building in Santa Fe. The agreement provided that Clarence would earn a commission of one percent of the loan amount upon delivery to Colgate of a loan commitment conforming to agreed specifications.

---

1. Unless otherwise noted, the New Mexico Mortgage Loan Company and Loan Broker Act, NMSA 1978, §§ 58–21–1 to –27

(Repl.Pamp.1991) shall be referenced throughout as the "Loan Broker Act" or simply the "Act."

On March 15, 1991, Clarence presented to Colgate a loan commitment from the Pan American Life Insurance Company, and Colgate executed it five days later.

It is undisputed that Clarence is a loan broker in Texas that does not have a registration certificate under Section 58–21–3 to transact business as a mortgage loan company or loan broker in this state. It is also undisputed that, as stated in Clarence's unopposed affidavit, Clarence performed all brokerage services for Colgate in El Paso, Texas after having been contacted by Colgate at its office in El Paso. The transaction that is the subject matter of this lawsuit is the only mortgage brokered by Clarence with any connection to New Mexico since Section 58–21–3 was enacted in 1983. Clarence never visited New Mexico in connection with the loan transaction, and all related correspondence and telephone calls originated from its office in El Paso. There is no evidence that Clarence makes purchases, employs regular personnel, keeps bank accounts, owns or rents office or other property in this state, or has any other contacts with New Mexico.

Clarence argues that the Loan Broker Act is not implicated by its agreement with Colgate because the Act's registration requirement only applies to brokerage firms and brokers who "transact business in the state of New Mexico." Section 58–21–3. This claim is based upon Clarence's unchallenged factual assertion that all of its brokerage services were performed in Texas. Clarence contends that because the Act is entirely inapplicable, it is not required to plead compliance with or exemption from its provisions, and the district court erred in dismissing its suit for noncompliance with the Act.

Colgate counters that the Loan Broker Act is applicable because Clarence had sufficient contacts with New Mexico in its brokerage business pursuits to constitute the "transact[ion of] business in the state of New Mexico, either directly or indirectly," under Section 58–21–3. These contacts are: Clarence agreed to broker a loan for a New Mexico business (Colgate Properties), owned by New Mexico residents (Colgate and McGuinness), to be secured by New Mexico real estate (the BLM building in Santa Fe), and Clarence sued Colgate to recover its loan brokerage fee in New Mexico district court.[2] Like Clarence's principal argument, Colgate's argument is based upon a substantive assessment of the scope of our Loan Broker Act.

### Discussion

■ Summary judgment is proper when the case presents no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. SCRA 1986, 1–056(C) (Repl.Pamp.1992); *Koenig v. Perez,* 104 N.M. 664, 665, 726 P.2d 341, 342 .(1986). For purposes of summary judgment, facts set forth in affidavits that are uncontroverted must be taken as true. *State ex rel. Bardacke v. New Mexico Fed. Sav. & Loan Ass'n,* 102 N.M. 673, 675, 699 P.2d 604, 606 (1985). Taking Clarence's uncontroverted affidavit as true, none of its brokerage services were provided in New Mexico, and there is no genuine issue of material fact on the determinative issue in this appeal.

■ In interpreting and applying statutes, we must determine and effectuate the intent of the legislature, *State ex rel. Klineline v. Blackhurst,* 106 N.M. 732, 735, 749 P.2d 1111, 1114 (1988), using the plain language of the statute as the primary indicator of legislative intent, *General Motors Acceptance Corp. v. Anaya,* 103 N.M. 72, 76, 703 P.2d 169, 173 (1985). Statutory language that is clear and unambiguous must be given effect. *State v. Jonathan M.,* 109 N.M. 789, 790, 791 P.2d 64, 65 (1990). Section 58–21–3 of the Loan Broker Act states:

**2.** Clarence allegedly had other minor contacts with New Mexico according to Colgate's briefs. In particular, Colgate alleges that the loan brokerage contract was "signed and formed" in New Mexico. Such bare assertions of fact made only in briefs, unsupported by evidence formally submitted in judicial proceedings, are arguments of counsel which cannot be considered as evidence to be passed upon by this Court. *See Fitzsimmons v. Fitzsimmons,* 104 N.M. 420, 427, 722 P.2d 671, 678 (1986).

It is unlawful for any person to transact business in the state of New Mexico, either directly or indirectly, as a mortgage loan company or loan broker without first filing an application with the director and obtaining a registration certificate under the Mortgage Loan Company and Loan Broker Act [this article], unless such person is exempt from the provisions of the Mortgage Loan Company and Loan Broker Act under the provisions of Section 6 [58–21–6 NMSA 1978] of that act.

Section 58–21–3 (brackets in original).

■ The Act's registration requirement applies only to mortgage loan companies or loan brokers who "transact business in the state of New Mexico, either directly or indirectly." *Id.* By its clear and unambiguous terms, the emphasis of this prerequisite to the Act's applicability is on the requirement that brokers "transact business in the state of New Mexico." Because Clarence did not perform the compensable services of a mortgage loan company or a loan broker in New Mexico, it did not "transact business in the state of New Mexico." Clarence's incidental contacts with New Mexico necessary to communicate with its New Mexico client are too remote to constitute transacting business in this state under the Act. Decisions interpreting sections of the New Mexico Business Corporation Act, NMSA 1978, Sections 53–11–1 to –18–12 (Repl.Pamp.1983 & Cum.Supp.1992), which condition their applicability upon "transacting business in this state" under Business Corporation Act Section 53–17–20, are in accord with our view that simply providing services to a New Mexico resident without performing any portion of such services in New Mexico does not constitute the transaction of business in New Mexico. *See, e.g., Riblet Tramway Co. v. Monte Verde Corp.,* 453 F.2d 313, 318 (10th Cir.1972) (holding under New Mexico law that a Washington corporation that sold ski lifts to New Mexico customers did not transact business in New Mexico although it had sent representatives to New Mexico to conduct an on-site inspection, and later, to secure and collect its debts); *Cessna Fin.*

*Corp. v. Mesilla Valley Flying Serv., Inc.,* 81 N.M. 10, 12–13, 462 P.2d 144, 146–47 (1969) (holding that a foreign corporation in the business of financing aircraft purchases that provided credit to New Mexico clients from out-of-state did not transact business in New Mexico by enforcing liens on personal property in New Mexico), *cert. denied,* 397 U.S. 1076, 90 S.Ct. 1521, 25 L.Ed.2d 811 (1970); *J.H. Silversmith, Inc. v. Keeter,* 72 N.M. 246, 249, 382 P.2d 720, 723 (1963) (holding that a foreign insurance company that from out-of-state appointed and removed New Mexico insurance agents and collected premiums on their behalf did not transact business in New Mexico).

■ As grammatically structured, the aside, "directly or indirectly," qualifies the main requirement that the broker "transact business in the state of New Mexico." *See* § 58–21–3. The qualification "directly or indirectly" appears intended to prevent a loan broker or brokerage firm from escaping regulation under the Act by alleging that it never physically entered New Mexico, or that it transacted business here only indirectly through its agents. We do not believe that the language "directly or indirectly" in Section 58–21–3 is intended to modify precedents defining the transaction of business in New Mexico under Section 53–17–1 of the New Mexico Business Corporation Act, thereby forcing brokers with the most minimal, insignificant contacts with New Mexico to register under the Loan Broker Act. Because the legislature is presumed to act with knowledge of relevant case law, and the provisions of a statute must be read together with other statutes *in pari materia, Incorporated County of Los Alamos v. Johnson,* 108 N.M. 633, 634, 776 P.2d 1252, 1253 (1989), we interpret the transaction of business requirement in the Loan Broker Act consistently with our Business Corporation Act precedents, absent a more clear statutory directive in the Loan Broker Act evidencing legislative intent to modify our interpretation.

Our view that the Loan Broker Act only applies to those who perform loan brokerage activities in New Mexico has been

adopted by several jurisdictions with similar statutes. For example, in *Lucas v. Gulf & Western Industries, Inc.*, 666 F.2d 800, 803 (3d Cir.1981), the Third Circuit Court of Appeals held that the Florida real estate brokers licensing statute defining brokers as those who perform certain activities "in this state" did not apply to persons who rendered brokerage services concerning Florida realty from outside Florida. Similarly, in *Paulson v. Shapiro*, 490 F.2d 1, 4 (7th Cir.1973), the fact that all real estate brokerage negotiations occurred outside Wisconsin rendered the Wisconsin real estate broker licensing statute inoperative. Also, in *Consul Ltd. v. Solide Enterprises, Inc.*, 802 F.2d 1143, 1151 (9th Cir.1986), the court ruled that under the California statute stating that "it is unlawful for any person to engage in ... business ... as a real estate broker ... within this state without first obtaining a real estate license," a broker unlicensed in California can recover on a contract relating to California realty when his brokerage activities are not performed in California.

■ Finally, the fact that Clarence chose to sue Colgate to recover his commission in a New Mexico court does not affect our conclusion. Under the Business Corporation Act, a statute similar to the Loan Broker Act in terms of its public policy objectives, the mere filing of a lawsuit in a New Mexico court does not in and of itself constitute "transacting business in this state," § 53–17–1(A). Though technically inapplicable, this provision indirectly affects our view of what level and nature of activity amounts to "transact[ing] business in the state of New Mexico" and, due to the similarity between the two provisions, it instructs our application of the relevant statute. We therefore conclude that under the Loan Broker Act, Section 58–21–3, merely filing a lawsuit in a New Mexico court does not in and of itself constitute "transact[ing] business in the state of New Mexico."

### Conclusion

Under the facts appropriately before us, Clarence's compensable loan brokerage services were performed entirely in Texas. We find as a matter of law that Clarence did not "transact business in the state of New Mexico" under Section 58–21–3 of the Loan Broker Act, and that, consequently, it is not required to obtain a registration certificate under the Act.[3]

For the foregoing reasons, we reverse the decision of the district court and remand for proceedings consistent herewith.

IT IS SO ORDERED.

RANSOM, C.J., and FRANCHINI, J., concur.

---

**3.** It is noteworthy that unlike the New Mexico Real Estate Brokers and Salesmen Act, NMSA 1978, 61–29–1 to –29 (Repl.Pamp.1990 & Cum. Supp.1992), and the New Mexico Business Corporation Act, the Loan Broker Act does not expressly bar from filing suit in New Mexico courts those who do not properly register under it. *See* § 61–29–16 (Repl.Pamp.1990); § 53–17–20(A). It is therefore unresolved whether a violation of the Loan Broker Act's registration requirement, Section 58–21–3, erects a per se barrier to filing suit in our courts. Because we find that Clarence did not violate Section 58–21–3, we need not reach this issue.