2005-NMCA-128

124 P.3d 566

**CITY OF SUNLAND PARK,**
Plaintiff–Appellee,

v.

**HARRIS NEWS, INC., Defendant–**
**Appellant.**

**No. 23,593.**

Court of Appeals of New Mexico.

Aug. 24, 2005.

Certiorari Granted, No. 29,437,
Nov. 14, 2005.

Mark C. Dow, Molly B. McIntosh, Darci A. Carroll, Bauman, Dow, McIntosh & León, P.C., Albuquerque, NM, for Appellee.

Stephen G. Peters, Mike Milligan, El Paso, TX, for Appellant.

## OPINION

KENNEDY, Judge.

{1} Defendant Harris News, Inc. (the Bookstore) appeals a district court order holding that it breached a settlement agreement (the Agreement) and engaged in statutory and common law nuisance, ordering the Bookstore to remove its truck sign and to cease operating an adult bookstore in its current location. The court further imposed a statutory penalty, and awarded damages. The Bookstore raises five arguments on appeal. First, it argues that the district court erred by considering parol evidence of the circumstances of the Agreement and that even if the court properly considered testimony in this regard, it erred by concluding that the Agreement was ambiguous. Second, the Bookstore contends that the district court misinterpreted the Agreement to prohibit the truck sign and nude dancing. Third, the Bookstore argues that the district court's ruling on statutory or common law nuisance is not supported by substantial evidence. Fourth, the Bookstore claims that the district court improperly applied the doctrines of res judicata and collateral estoppel to bar consideration of the Bookstore's constitutional defenses. Fifth and last, the Bookstore argues, even if it did breach the Agreement with Plaintiff City of Sunland Park (Sunland Park), create a nuisance, or both, it was an abuse of discretion to close the Bookstore's business.

{2} We reverse in part and affirm in part. In the matter of the Agreement that Sunland Park and the Bookstore had entered into prior to this litigation, we hold that the district court improperly construed it to incorporate Sunland Park's ordinances. As a result, we reverse the remedies that flowed from any alleged violation of the ordinances, including the statutory penalties imposed and the closure of the Bookstore. We further hold that the district court properly construed the Agreement to limit the Bookstore to displaying the one sign described in the Agreement and properly heard extrinsic evidence to clarify the Agreement's ambiguity in this regard. Therefore, we affirm the district court's conclusion that the Bookstore breached the Agreement by displaying an additional sign than provided for in the Agreement and affirm its injunction ordering its removal. We reverse the monetary damages awarded to Sunland Park for breach of the Agreement for lack of supporting evidence. As a result of our holdings on the construction of the Agreement, we do not reach the application of res judicata and collateral estoppel. Last, we reverse the district court's nuisance rulings for lack of supporting evidence and the absence of statutes or common law declaring the Bookstore's activities nuisances. As a result, we do not address whether the district court erred by closing down the Bookstore's operations to abate the nuisance.

## FACTUAL AND PROCEDURAL BACKGROUND

{3} On December 3, 1998, the Bookstore filed suit in federal district court against Sunland Park seeking to prevent Sunland Park from enforcing its zoning ordinances. In that suit, the Bookstore asserted first amendment rights in the operation of an adult bookstore and video store located in Sunland Park less than one thousand feet from a residentially zoned district and less than five hundred feet from a liquor establishment. The federal district court issued a temporary restraining order against Sunland Park. It appears that the parties agreed on December 7, 1998, to postpone the hearing in federal court and further that, pending such a hearing, Sunland Park would allow the Bookstore to remain open and operating. The Bookstore agreed that it would not post any signage visible from the road or advertise the sale of adult materials on the building, in the parking lot, or the surrounding area, and that it would apply for a permit for the sign in an expedited application process.

{4} After further negotiations, on May 4, 1999, the parties entered into the Agreement whereby the Bookstore agreed to dismiss its federal lawsuit and any potential claims against Sunland Park officials related to the lawsuit. In turn, Sunland Park agreed not to enforce its ordinances that would prohibit the Bookstore's operations and its advertisement of adult material. Subsequently, the Bookstore displayed a truck in its parking lot with the words "Adult Video" illuminated on its side (the truck sign). The Bookstore also advertised and provided nude dancing on its premises.

{5} Sunland Park initiated the action that is the subject of this appeal on May 26, 2000, by filing suit in the New Mexico district court alleging breach of contract and violation of its ordinances. It sought a temporary restraining order and a hearing to obtain a preliminary and permanent injunction against the Bookstore to cease its operations. The Bookstore failed to appear at the hearing, and the district court issued a preliminary injunction enforcing the Agreement by enjoining the Bookstore from allowing nude dancing and from displaying the truck sign on its premises. The Bookstore filed a motion to vacate the injunction on the grounds of improper notice, which the district court granted on April 2, 2001.

{6} On July 5, 2000, while Sunland Park's suit was pending in the New Mexico district court, the Bookstore filed a complaint in the United States District Court for the Western District of Texas, El Paso Division, seeking declaratory and injunctive relief, arguing that Sunland Park was inappropriately attempting to enforce its ordinances to preclude the truck sign that was allegedly located in Texas. On July 6, 2000, the federal court granted a temporary restraining order enjoining Sunland Park from enforcing its ordinance against the Bookstore or any vehicle parked in any portion of the lot that is located in Texas. After an evidentiary hearing, the federal court concluded that an injunction was not warranted, dissolved the temporary restraining order, and dismissed the case.

{7} In this case, still pending in the New Mexico district court, Sunland Park amended its complaint to add nuisance claims to its breach of contract claims. Sunland Park also moved for partial summary judgment on the grounds that the Bookstore's constitutional defenses should be barred by the doctrines of res judicata and collateral estoppel based on the Texas federal district court's decision that the Bookstore had waived its constitutional claims by entering into the Agreement. The district court granted Sunland Park's motion for partial summary judgment, ruling that the federal decision precluded the relitigation of the Bookstore's constitutional claims. In addition to its request that the Bookstore's operations as an adult bookstore and video store be permanently enjoined, Sunland Park requested unspecified amounts of punitive damages for the Bookstore's breach of the Agreement and of the covenant of good faith and fair dealing and for nuisance per se. Sunland Park also requested damages for violation of its sign ordinance or nuisance per se, asserting that it set a maximum penalty of $500 and that each day in which the Bookstore was in violation of its sign ordinance constituted a separate offense. Sunland Park re-

quested damages totaling $398,500 for the 797 days of the Bookstore's violation of the sign ordinance.

{8} The district court concluded that the Bookstore's truck sign and the nude dancing permitted on its premises breached the parties' Agreement. The district court further concluded that, as a result of the breach, Sunland Park could enforce its ordinances against the Bookstore to cease its operations in the sale of adult material. The district court ordered the Bookstore to pay $1250 as a statutory penalty for violation of the sign ordinance and another $1250 as consequential and punitive damages for breach of the Agreement.

{9} As to Sunland Park's nuisance claims, the district court found that the Bookstore itself, its truck sign, and the nude dancing were a public nuisance, a nuisance per se, and that the truck sign and store impaired the property values and the quiet enjoyment of the property of the adjacent residents. Concluding that the Bookstore was liable for "statutory and common law nuisances" by causing "consequential damage to the public and private residents in the area," the district court also ordered damages in the amount of $1250. This appeal followed.

## DISCUSSION

### The Contract Arguments

{10} The Bookstore challenges the district court's interpretation of the Agreement as prohibiting nude dancing and its truck sign. The Bookstore argues that since the Agreement was not ambiguous as to whether it prohibited the truck sign, the court erred in using parol evidence of the parties' intended meaning. In this context, it argues that the district court's findings were inconsistent. As a preliminary matter, we must determine whether the Agreement was ambiguous as to whether it permitted other signage. We then address each of the Bookstore's arguments in turn.

### The Agreement

{11} Sunland Park entered into the Agreement after the federal court judge in the first federal case warned Sunland Park that it was not likely to prevail on the merits. Sunland Park subsequently negotiated the Agreement with the Bookstore. Sunland Park agreed, at a minimum, not to enforce its zoning ordinances for twenty years in exchange for the Bookstore's promise to dismiss the federal lawsuit and to not refile it in any form.

{12} The Agreement stated the following:

1. [Sunland Park] agrees not to enforce its zoning ordinance so as to prohibit operation of the [Bookstore] at its present location for a period of twenty (20) years following the execution of this Agreement, regardless of the uses of other lands within one thousand (1,000) feet of the property boundary of the [Bookstore].

2. [Sunland Park] agrees not to enforce its zoning ordinance so as to prohibit [the Bookstore] from advertising the [Bookstore's] goods and services by the erection of a lighted sign above the front wall of the building, facing Emory Way, bearing the words "Arcade Video" [and] in all other respects as shown on in [sic] the sketch map accompanying the application.... The said sign shall have a horizontal dimension no greater than twelve (12) feet, a vertical dimension no greater than four (4) feet, and a total height of no more than fourteen (14) feet above the land surface. The lettering of said sign will not exceed twenty (20) inches per letter.

. . . .

4. In consideration of [Sunland Park's] agreement not to enforce its zoning ordinance so as to prohibit the operation of the [Bookstore] and the erection of an advertising sign as described above, [the Bookstore] agrees that its Lawsuit against [Sunland Park] will be . . . dismissed and will not be refiled in any form.

. . . .

6. Nothing contained in this General Release and Agreement constitutes or should be construed as an admission by [Sunland Park] that its zoning ordinances ... cannot be fully enforced ... against any use of the Subject

Property other than that described herein....

....

9. This General Release is the entire agreement between the parties as of the date hereof, except for zoning and other permits already granted by [Sunland Park]. Any and all prior agreements or understandings that are not embodied in this General Release or in formal approval of a prior application to [Sunland Park] are of no force and effect and the terms of this General Release may not be modified, except by written agreement of the parties.

The Agreement stated again in another paragraph that Sunland Park agreed to forgo enforcement of its zoning ordinance to prohibit the Bookstore's operations and to prohibit the sign described above. The Agreement did not specifically state that the Bookstore was prohibited by the Agreement, rather than the Sunland Park ordinances, from any other use of the property or advertising on the property.

**Standards of Review and Framework for Analysis**

{13} There are two levels to analyzing when parol evidence may be used. Initially, we assess whether an ambiguity exists in the contract language. The district court may hear extrinsic evidence to answer this preliminary question. *Mem'l Med. Ctr., Inc. v. Tatsch Constr., Inc.,* 2000–NMSC–030, ¶ 16, 129 N.M. 677, 12 P.3d 431. If the district court determines that the contract is not ambiguous, it need not admit the extrinsic evidence to aid it in its interpretation. *Id.* On the other hand, if the district court decides that a term is ambiguous, it may admit extrinsic evidence to explain what the parties meant the term to mean. *C.R. Anthony Co. v. Loretto Mall Partners,* 112 N.M. 504, 508, 817 P.2d 238, 242 (1991). Since its conclusion of ambiguity or lack of ambiguity is also a ruling on whether extrinsic evidence may or may not be heard, the admission or exclusion of extrinsic evidence to explain an ambiguous term is reviewed de novo. *See Mem'l Med. Ctr., Inc.,* 2000–NMSC–030, ¶ 18 ("Whether ambiguity exists is a question of

law; therefore, this Court reviews the district court's decision to exclude extrinsic evidence de novo.").

{14} "The parol evidence rule 'bars admission of evidence extrinsic to the contract to contradict and perhaps even supplement the writing.' " *Id., at* ¶ 16 (quoting *C.R. Anthony Co.,* 112 N.M. at 509, 817 P.2d at 243). However, even where a term or provision of a contract is unambiguous, parol evidence may still be used "to supply terms not in the written contract ... or to show fraud, misrepresentations, or mistake." *Univ. of N.M. Police Officer's Ass'n v. Univ. of N.M.,* 2004–NMCA–050, ¶ 11, 135 N.M. 655, 92 P.3d 667 (internal quotation marks and citation omitted). Thus, the inquiry into whether parol evidence was properly admitted and utilized hinges upon the purpose for which the evidence was offered and exactly how the evidence was used. *Cf. Cent. Sec. & Alarm Co. v. Mehler,* 1996–NMCA–060, ¶ 47, 121 N.M. 840, 918 P.2d 1340.

**The Agreement was Ambiguous as to Permissible Signage; the District Court did not Err in Using Parol Evidence**

{15} Both Sunland Park and the Bookstore assert that the unambiguous language of the Agreement supports their respective interpretations. The district court concluded that the Agreement was unambiguous in permitting the Bookstore the one sign specified in the Agreement. At this point our inquiry is whether the Agreement's signage language was reasonably susceptible to different meanings. *See Sitterly v. Matthews,* 2000–NMCA–037, ¶ 16, 129 N.M. 134, 2 P.3d 871; *Schueller v. Schueller,* 117 N.M. 197, 199, 870 P.2d 159, 161 (Ct.App.1994). "Reasonableness is the touchstone for determining whether there is a true lack of clarity." *Berry v. Fed. Kemper Life Assurance Co.,* 2004–NMCA–116, ¶ 60, 136 N.M. 454, 99 P.3d 1166. To find that a provision is ambiguous, we require more than the parties' dispute over what that provision means. *Id.*

{16} In the Agreement itself, Sunland Park agreed not to enforce its ordinances in a manner that would prohibit "a lighted sign above the front wall of the building, facing

Emory Way, bearing the words 'Arcade Video' [and] in all other respects as shown on in [sic] the sketch map accompanying the application." In the sketch attached to the Agreement, before the word "Video," the word "Adult" was removed to conform to the Agreement's "Arcade Video" language. The Agreement specified that this sign would have certain dimensions and lettering. The Agreement further expressly stated that in exchange for Sunland Park's "agreement not to enforce its zoning ordinance so as to prohibit ... the erection of an advertising sign as described above," the Bookstore dismiss its claims against the City.

{17} Frank Coppler, the city attorney who had negotiated the Agreement, testified at trial. The district court admitted his testimony to determine whether the Agreement was ambiguous. Coppler testified that the parties negotiated the Agreement with the idea that Sunland Park did not want the Bookstore to display signs that attracted people from the streets and that the use of "Arcade Video" over "Adult Video" was vigorously negotiated. From this, Coppler formed a belief that the parties intended that the sign described in the Agreement would be the only sign allowed under the Agreement. John Fahle, who represented the Bookstore, testified that one of his associates (who did not testify at trial) had handled all of the negotiations leading to the Agreement.

{18} The question then is whether this evidence renders the Agreement reasonably susceptible to two different meanings? *See Sitterly*, 2000–NMCA–037, ¶ 16. On one hand, the Agreement itself does not explicitly state the Bookstore's promise to limit itself only to the sign described in the Agreement. Thus, the Agreement could reasonably be interpreted as not containing such a promise. On the other hand, the Agreement details with much specificity concerning the sign that it permits, and does so in the singular, e.g., "an advertising sign." Additionally, Coppler's testimony that the parties discussed this Agreement as limiting the Bookstore to that one specifically described sign, and extensively negotiated what it would say, could lead to interpreting the Agreement as the Bookstore's promise to limit itself to that

one sign. We therefore disagree with the district court's conclusion that the Agreement was unambiguous in permitting only the sign described in the Agreement. However, since we agree with the district court's interpretation of the Agreement to contain the Bookstore's promise not to post other signage (as will be discussed more extensively later in this opinion), we do not reverse on the basis of this issue. *See Meiboom v. Watson*, 2000–NMSC–004, ¶ 20, 128 N.M. 536, 994 P.2d 1154 (stating that we will affirm the district court where it ruled correctly, but for the wrong reason, if not unfair to the appellant). We now address the district court's findings and the parol evidence it used.

{19} The Bookstore generally challenges the testimony of Coppler as parol evidence. New Mexico permits parol evidence to be used more expansively than the Bookstore would have us allow. Here, the district court permissibly used Coppler's testimony to determine whether the Agreement was ambiguous. *See Mem'l Med. Ctr., Inc.*, 2000–NMSC–030, ¶ 16. We have held that the Agreement was ambiguous. Therefore, the district court could properly admit extrinsic evidence for the purpose of determining the parties' intended meanings. *See C.R. Anthony Co.*, 112 N.M. at 508, 817 P.2d at 242. As the district court allowed here, this evidence may include "preliminary negotiations and other factors." *Id.* at 509 n. 3, 817 P.2d at 243 n. 3. We thus do not agree that Coppler's testimony could be no broader than references to "a particular term or expression." We have previously stated that "ambiguity comprises both ambiguous terms and general lack of clarity." *Cent. Sec. & Alarm Co.*, 1996–NMCA–060, ¶ 46. Even though cases like *Hedicke v. Gunville*, 2003–NMCA–032, ¶ 13, 133 N.M. 335, 62 P.3d 1217, involved the interpretation of single, short phrases, we have also repeatedly stated that "a court may hear evidence of the circumstances surrounding the making of the contract and of any relevant usage of trade, course of dealing, and course of performance." *Bogle v. Summit Inv. Co.*, 2005–NMCA–024, ¶ 10, 137 N.M. 80, 107 P.3d 520 (internal quotation marks and citation omitted). On one hand, Coppler's testimony as to

his discussions with the Bookstore was "evidence of the circumstances surrounding the making of the contract," and indicative of an issue-driven course of dealing between the parties. *Id.* (internal quotation marks and citation omitted). On the other hand, Coppler's testimony as to his subjective belief of the parties' intent is not. *See id.* The district court must make this distinction. Here, though, any error in admitting Coppler's testimony as to the parties' intent and understandings was harmless. *See Santa Fe Custom Shutters & Doors, Inc. v. Home Depot U.S.A., Inc.*, 2005–NMCA–051, ¶¶ 31–32, 137 N.M. 524, 113 P.3d 347. The other evidence presented was sufficient without this testimony. *See id.*

{20} Finally, in the context of its parol evidence arguments, the Bookstore makes a number of other assertions that we briefly address. It attacks the district court's findings of fact as inconsistent. Allegations of inconsistency are not enough. *See Herrera v. Roman Catholic Church*, 112 N.M. 717, 721, 819 P.2d 264, 268 (Ct.App.1991) ("Unless clearly erroneous or deficient, findings of the trial court will be construed so as to uphold a judgment rather than to reverse it."). The Bookstore states that the district court should not have rejected Fahle's testimony that the word "Arcade" was never negotiated. However, "when there is a conflict in the testimony, we defer to the trier of fact." *Buckingham v. Ryan*, 1998–NMCA–012, ¶ 10, 124 N.M. 498, 953 P.2d 33. The Bookstore briefly suggests that there was no mutual assent. This, too, is a question of fact. *See id.* The Bookstore's other assertions, if intended as arguments, are insufficient to raise an issue for review.[1] *See, e.g., State v. Barrera*, 2001–NMSC–014, ¶ 33, 130 N.M. 227, 22 P.3d 1177 (refusing to address inadequate arguments). We now turn to what the Agreement means.

**Whether the District Court Erred in the Meanings it Assigned to the Terms of the Agreement**

**i. The Truck Sign**

{21} Having held that the Agreement was ambiguous as to whether it prohibited the truck sign, we must decide whether the district court's interpretation of the Agreement in this regard was supported by substantial evidence. *See Bogle*, 2005–NMCA–024, ¶ 10,; *see also Mark V, Inc. v. Mellekas*, 114 N.M. 778, 781, 845 P.2d 1232, 1235 (1993) (holding that where the district court concludes that an agreement is reasonably susceptible to different interpretations and where "evidence of surrounding facts and circumstances is in dispute, turns on witness credibility, or is susceptible of conflicting inferences, the meaning must be resolved by the appropriate fact finder"). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Salgado*, 1999–NMSC–008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (internal quotation marks and citations omitted). We both resolve disputed facts and indulge in all reasonable inferences in favor of the district court's judgment. *See id.* We do not reweigh the evidence. *Id.*

{22} Here, the district court determined that by its repeated and highly specific references to one sign, the Agreement restricted the Bookstore's ability to post any other signs. It concluded that Coppler's testimony supported this interpretation. We agree, and hold that substantial evidence supported this conclusion.

{23} As described above, the Agreement repeatedly refers to a single sign. The Agreement states that this sign may be lighted, is to be placed in a specific place on the building, and must face a certain road. The sign was to say "Arcade Video." The sign was to further have specific dimensions and lettering not above a certain size.

{24} Coppler testified that he and the Bookstore specifically negotiated and agreed on the one sign specifically described in the Agreement. Also, an aspect of the Agreement that was heavily negotiated was the wording of the sign. When the Bookstore's sign company produced a sketch of a pro-

---

1. For example, portions of the brief in chief seem to suggest an integration issue even though these assertions are not described or argued as such.

posed sign that said "Adult Video," Sunland Park rejected it. The Agreement allowed the "Arcade Video" wording specifically to prohibit such objectionable wording.

{25} In another attempt to avoid enforcement of the Agreement against the truck sign, the Bookstore argues that the Agreement does not govern the truck sign, which was located in Texas, because only land situated in New Mexico is subject to the Agreement. The recitals prefacing the Agreement stated that the "Subject Property" is located in Sunland Park, New Mexico, and was described more particularly in metes and bounds in an exhibit, attached to the Agreement. In the district court, the parties disputed whether the metes and bounds description included any property located in Texas or only property in New Mexico, whether the truck sign was placed in Texas and/or New Mexico, and from where the sign was visible.

{26} In support of this argument, the Bookstore points to an interim agreement, in which the parties agreed that the Bookstore would not "post any signage, which would be visible from the road, advertising adult materials on the building, in the parking lot, or any immediate surrounding area." The Bookstore argues that because no language appears in the final Agreement regulating any of the Bookstore's future conduct in Texas, the Agreement does not govern any signs in Texas.

{27} As discussed extensively above, the evidence indicates that a reasonable interpretation of the Agreement and understanding would permit only one sign, regardless of the location of any other sign on the site. Therefore, substantial evidence supports the conclusion that the Agreement prohibited the truck sign whether it was in New Mexico or in Texas. For these reasons, we hold that the Bookstore cannot avoid enforcement of the Agreement to prohibit the truck sign by arguing that the truck sign was located in Texas. Further, we hold that substantial evidence supported the district court's conclusion that the display of the truck sign breached the Agreement.

{28} We hold that this evidence is sufficiently substantial to justify the district court's conclusion that the Bookstore had promised to only post the one sign described in the Agreement. Additionally, because we hold that there was substantial evidence to support the district court's conclusion that the Agreement itself embodied the Bookstore's promise to post only the sign describe therein, we do not address the Bookstore's argument that Coppler's testimony improperly supplied this promise as a term to the Agreement.

### ii. Nude Dancing

{29} We are unable to tell whether the court interpreted the Agreement to prohibit nude dancing based on a determination that the language was unambiguous, or based on a decision that the language was ambiguous and further based on parol or extrinsic evidence to determine the meaning of the language. The importance of this distinction generally would lie in the resultant standard of review. Compare Bogle, 2005–NMCA–024, ¶ 10 (stating that ambiguous terms are subject to a substantial evidence review), with Aspen Landscaping, Inc. v. Longford Homes of N.M., Inc., 2004–NMCA–063, ¶¶ 14, 21, 135 N.M. 607, 92 P.3d 53 (stating that the meaning of an unambiguous term is a question of law that we review de novo). However, even under the more deferential substantial evidence standard of review, the district court's conclusion that the Agreement prohibited nude dancing was unjustified.

{30} The only evidence that the Agreement might somehow prohibit nude dancing was paragraph six. This paragraph stated that, "[n]othing contained in this General Release and Agreement constitutes or should be construed as an admission by the City that its zoning ordinances ... cannot be fully enforced against ... any use of the Subject Property other than that described herein." In the recitals, the Bookstore was described as "a retail store ... dealing in adult-oriented books and videos." The district court appears to have reasoned that because the Bookstore was described as it was, and this use was a special use, any other special use would be a breach of the Agreement.

{31} We hold that this evidence was not sufficient to support the district court's conclusion that the Bookstore had agreed to refrain from any other uses of its property. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[.]" *Salgado*, 1999–NMSC–008, ¶ 25 (internal quotation marks and citation omitted). The evidence upon which the district court relied is simply insufficient to support the necessary elements of a contract.[2] *See, e.g., DeArmond v. Halliburton Energy Servs., Inc.*, 2003–NMCA–148, ¶ 20, 134 N.M. 630, 81 P.3d 573 ("In the absence of evidence in the record of a meeting of the minds, the trial court could not find that there was mutual assent.").

### iii. Ordinance Violations

[12] {32} Again using the more deferential standard of substantial evidence, we review the district court's treatment of the Sunland Park zoning ordinances. The district court concluded that not only did the truck sign and nude dancing breach the Agreement (as discussed above), the sign and dancing were violations of the Sunland Park City zoning ordinances. It reasoned that because the Agreement permitted Sunland Park to enforce its ordinances in the event of the Bookstore's breach, Sunland Park was not only entitled to contract damages, but a statutory penalty as provided in the ordinances.[3] We disagree. First, even if the Agreement could be construed as the Bookstore's promise not to disobey any of Sunland Park's ordinances, obeying the law is a pre-existing legal duty. *See, e.g., Jaynes v. Strong–Thorne Mortuary, Inc.*, 1998–NMSC–004, ¶ 11, 124 N.M. 613, 954 P.2d 45 (describing the pre-existing duty rule). Second, Sunland Park's statement that it was not waiving its right to enforce its ordinances

is not tantamount to the Bookstore's promise to obey them. Third, there was not any evidence of such a promise. *See State v. Boergadine*, 2005–NMCA–028, ¶ 37, 137 N.M. 92, 107 P.3d 532 (stating that counsel's arguments are not evidence and are insufficient to support proposed facts). Therefore, we hold that there was insufficient evidence that the Agreement contained the Bookstore's promise to obey Sunland Park's ordinances. We therefore reverse the district court's conclusion that the Sunland Park ordinances were enforceable via Sunland Park's breach of contract action.[4]

### Contract Relief Awarded

{33} For the Bookstore's breach of contract, the district court ordered (1) that the truck sign be removed, (2) that the Bookstore cease operations, (3) that the Bookstore pay $1,250 as a statutory penalty violation of the Sunland Park ordinances, and (4) that the Bookstore pay $1250 in punitive and consequential damages.

### Damages Based on Violations of Sunland Park Ordinances

{34} Consistent with our holding that the Agreement did not incorporate the Sunland Park ordinances, we reverse the district court's order to the extent that it imposed penalties for breach of contract based on those ordinances. We therefore vacate the district court's award to Sunland Park of the $1,250 penalty.

### Consequential and Punitive Damages

{35} The district court's award of consequential and punitive damages was based on the Bookstore's breach of contract. However, the district court's order does not delin-

---

2. While under this more deferential standard of review we do not reweigh the evidence, Sunland Park's own key witness testified that uses of the property, and specifically nude dancing, were never contemplated by either party when they entered into the Agreement. He stated that the Agreement was only about the sign.

3. The ordinances describe violations as "offense[s]" with potential jail time, which upon "conviction" require the imposition of certain mandatory fees that the district court did not

impose. Under the ordinances, a conviction requires a plea or a finding of guilt on the "criminal charge."

4. The brief in chief does not raise, and we hence do not discuss, whether what appears to be a criminal ordinance may be enforced in such a civil action, and if so, whether Sunland Park ever asserted a sufficient cause of action in this regard. *See Aragon*, 109 N.M. at 634, 788 P.2d at 934.

eate what it awarded for the Bookstore's breach of contract for the truck sign (which we affirm) and what it awarded for the Bookstore's breach of contract for violation of the ordinances (which we reverse). We therefore remand for recalculation of the consequential and punitive damages based solely on the truck sign breach.

### Removal of the Truck Sign

{36} Consistent with our holding that the Bookstore's truck sign constitutes a breach of the Agreement, we affirm the district court's injunctive order to remove the truck sign insofar as this relief was awarded based on breach of contract. While we note that where specific performance affords the full benefit of the contract, damages will not ordinarily be awarded, *see McCoy v. Alsup*, 94 N.M. 255, 262, 609 P.2d 337, 344 (Ct.App. 1980), this argument was not raised by the parties. *See Deaton v. Gutierrez*, 2004–NMCA–043, ¶ 26, 135 N.M. 423, 89 P.3d 672 (stating that it is improper for this Court to consider arguments not raised by the parties).

### Ceasing the Bookstore's Operations in Its Current Location

{37} The Bookstore was ordered, as a remedy for its breach of the Agreement, "[t]o immediately cease operation as an illegal [ ] Adult Bookstore/Video Store operating within 1000 feet from a residential area and operating within 500 feet of a business serving alcoholic beverages." This remedy clearly and explicitly incorporates and was predicated upon the district court's erroneous incorporation of the Sunland Park ordinances into the Agreement. We therefore vacate this order as a remedy for breach of contract in this case.

### Whether Substantial Evidence Supports the District Court's Ruling that Nude Dancing and the Truck Sign Constitutes Statutory and Common Law Nuisance

{38} The Bookstore claims that there was insufficient evidence presented below to support the district court's conclusions of statutory and common law nuisance. We review the district court's findings of fact for sub-

stantial evidence, and review de novo the legal conclusions it draws from the facts. *State v. Rector*, 2005–NMCA–014, ¶ 4, 136 N.M. 788, 105 P.3d 341.

{39} The district court found that the truck sign was a "visual light nuisance," that the truck sign, the nude dancing, and the Bookstore itself "interfere[d] with the exercise and enjoyment of public rights, including the right to use public property," were nuisances per se, and "unreasonably interfere[d] with rights common to the general public." The district court said that "[u]nder the circumstances, the truck sign, the nude dancing and the adult bookstore are not only a nuisance by their nature, but are also a nuisance in fact locality [sic], and the manner in which they are conducted or managed." The court found that the Bookstore, the sign, and the nude dancing had "create[d] light and aesthetic injury to" a neighboring residence. It concluded that:

> 12. The truck sign, nude dancing, dimensions of the lighted truck sign constitute a statutory nuisance injurious to the public health, safety and welfare of the public and/or interferes with the exercise of the public rights, including right to use public property and causes a statutory and public nuisance.

> 13. The truck sign, nude dancing, dimensions of the lighted truck sign is an unreasonable interference with the general public's right causing a common law nuisance.

{40} Common law and statutory public nuisance are similar concepts in New Mexico, both described as an "unreasonable interference with a right common to the general public." *State ex rel. Village of Los Ranchos v. City of Albuquerque*, 119 N.M. 150, 163, 889 P.2d 185, 198 (1994) (internal quotation marks and citation omitted). New Mexico's public nuisance statute states that:

> A public nuisance consists of knowingly creating, performing or maintaining anything affecting any number of citizens without lawful authority which is either:

> A. injurious to public health, safety, morals or welfare; or

B. interferes with the exercise and enjoyment of public rights, including the right to use public property.

Whoever commits a public nuisance for which the act or penalty is not otherwise prescribed by law is guilty of a petty misdemeanor.

NMSA 1978, § 30–8–1 (1963). New Mexico common law more specifically defines public nuisance as either nuisances per se or nuisances in fact. A nuisance per se is "an activity, or an act, structure, instrument, or occupation which is a nuisance at all times and under any circumstances, regardless of location or surroundings." *Village of Los Ranchos,* 119 N.M. at 164, 889 P.2d at 199 (internal quotation marks and citation omitted). A nuisance in fact is described as "an activity or structure which is not a nuisance by nature, but which becomes so because of such factors as surroundings, locality, and the manner in which it is conducted or managed." *Id.*

{41} In contrast, a private nuisance is distinguished by the interest invaded; it is an unreasonable interference with the private use and enjoyment of land. *See Scott v. Jordan,* 99 N.M. 567, 570, 661 P.2d 59, 62 (Ct.App.1983) (adopting the definition of a private nuisance contained in Restatement (Second) of Torts § 821D (1979)); 58 Am.Jur.2d *Nuisances* § 31 (2002). Accordingly, only those whose private use and enjoyment in land has been injured may assert a claim of private nuisance. *See* 58 Am. Jur.2d *Nuisances* § 45; *see also* Restatement (Second) of Torts § 821E (1979). Although a private nuisance "affects the enjoyment of some private right not common to the public," *see* 58 Am.Jur.2d *Nuisances* § 44, a nuisance may be both public and private, or "mixed," where "a considerable number of people suffer in the interference with their use and enjoyment of land." 58 Am.Jur.2d *Nuisances* § 33.

{42} In its final order, the district court decreed that the Bookstore "engaged in statutory and common law nuisances." *See Village of Los Ranchos,* 119 N.M. at 163, 889 P.2d at 198 ("The common law public nuisance is similar to the New Mexico public nuisance statute, Section 30–8–1."); *cf. State v. Davis,* 65 N.M. 128, 132, 333 P.2d 613, 616 (1958) (distinguishing between statutory and common law nuisances per se and a nuisance in fact). The district court's findings and conclusions indicate that the district court found that the Bookstore's truck sign constituted a private nuisance, that the Bookstore's operation in its current location constituted a nuisance per se, and that the Bookstore's operation in its current location, the truck sign, and the nude dancing constituted nuisances in fact.

{43} Sunland Park presented very little evidence, if any, that the Bookstore's business in its current location, the truck sign, and the nude dancing constitute nuisances of any kind. Sunland Park's allegations of nuisance consist largely of conclusory assertions of counsel and point specifically to the impact on only the Cox family residence, and, once, in a pleading, Sunland Park mentioned the impact on a Catholic Church residence about which the district court made no findings. *See V.P. Clarence Co. v. Colgate,* 115 N.M. 471, 472, 853 P.2d 722, 723 (1993) ("[T]he briefs and arguments of counsel are not evidence upon which a trial court can rely[.]"). The attorney for Sunland Park asserted, without presenting evidence, that the adult video store and the truck sign impaired or diminished the property value of the neighboring Cox family residence, that the truck sign created a visual light nuisance in New Mexico, and that it impaired the Cox family's use and enjoyment of their property. *See id.* No member of the Cox family ever testified. In its trial brief, Sunland Park represented, without citing the transcript, that testimony supported its nuisance claims. However, the only testimony presented to support its nuisance allegations relate to the Cox family residence and was given by a building inspector and a police officer. The building inspector, testifying mostly about the size and location of the truck sign, testified that the "Adult Video" sign is visible from, and lights the ground by, the Cox family's mailbox located by the street. The police officer testified that the truck sign occasionally used to face the Cox's farm and that Mrs. Cox reported that trash was thrown onto her property.

{44} To the extent the district court may have ruled that the Bookstore created a mixed nuisance, and even assuming Sunland Park has standing to seek redress for such a nuisance, such a ruling is also not supported by the record. The district court's final order indicates that it may have concluded the nuisance was both public and private, when it stated that the Bookstore's nuisances "caused consequential damage to the public and private residents in the area of the [Bookstore's] property." The record, however, does not indicate that "a considerable number of people [have] suffer[ed] in the interference with their use and enjoyment of land." 58 Am.Jur.2d *Nuisances* § 33 (describing a mixed nuisance). As stated above, the record indicates that Sunland Park presented only scant evidence suggesting that the Cox family residence was specifically affected.

{45} As to the district court's finding of a public nuisance in fact, there is also insufficient evidence in the record to support it. Although we have no case law indicating what evidence would be necessary to prove that an adult bookstore, nude dancing, or an illuminated sign advertising adult materials constitutes a public nuisance in fact, it is clear that some evidence of injury to the public, rather than a mere assertion of injury, is required. *See* 58 Am.Jur.2d *Nuisances* § 21 (stating that "[t]he existence of a nuisance in fact is a question for the trier of fact, which may or may not find the existence of a nuisance from proof of the act and its consequences"). Sunland Park did not, for instance, present evidence that the Bookstore, nude dancing, or the truck sign creates a traffic problem, leads to increased criminal activity on the premises or surrounding area, impairs "the character and quality of residential neighborhoods," or otherwise violates some substantial public right or interest shared by a considerable number of people. *Cf. SDJ, Inc. v. City of Houston,* 837 F.2d 1268, 1272 (5th Cir.1988) (describing the evidence considered by the city of the impact of sexually oriented businesses on the area when adopting an ordinance regulating such businesses); 58 Am.Jur.2d *Nuisances* §§ 39–41 (stating that proof is·required that the alleged nuisance substantially deprived a

considerable number of people of a public right). Rather, Sunland Park blankly asserted that the Bookstore, the truck sign, and the nude dancing were injurious to public health, safety, morals, and/or welfare. Therefore, we hold that the district court's finding of public nuisance in fact is not supported by substantial evidence.

{46} Without presenting evidence of a nuisance in fact, Sunland Park seems to rely on a legal argument. *See V.P. Clarence Co.,* 115 N.M. at 472, 853 P.2d at 723 (noting that the arguments of counsel are not evidence). Sunland Park argues that because the Bookstore may not conduct its business, provide nude dancing, or display the truck sign in its current location under the ordinances, these activities constituted nuisances. The violation of a municipal ordinance is not, however, sufficient to prove either nuisance in fact or nuisance per se. *See* 58 Am.Jur.2d *Nuisances* § 134.

{47} In contrast, where the state legislature has validly declared that a certain act constitutes a public nuisance, "against which an injunction may issue without allegation or proof of irreparable injury," the act will be considered a nuisance per se. 58 Am.Jur.2d *Nuisances* § 61 (noting that the legislative determination of a nuisance per se is still subject to constitutional challenge and judicial review); *see also Davis,* 65 N.M. at 132, 333 P.2d at 616 ("An act may be enjoined as constituting a public nuisance where [it is] declared by statute to be a nuisance per se[.]"). There are no statutes in New Mexico, however, declaring that an adult bookstore, nude dancing, or an illuminated truck sign advertising adult material constitutes a nuisance per se. *See Scott,* 99 N.M. at 570, 661 P.2d at 62 (defining a nuisance per se); 58 Am.Jur.2d *Nuisances* § 61 (same).

{48} In the absence of a specific nuisance statute prohibiting such activities, the district court ruling might be supported by common law. We have not, however, found a decision in any jurisdiction holding that a bookstore, an illuminated truck sign advertising adult material, or nude dancing is a nuisance per se under common law. *Cf. Davis,* 65 N.M. at

131–33, 333 P.2d at 615–16 (reversing the injunction that closed down a social club for the sale of alcohol, which was illegal in the county, in the absence of evidence proving a nuisance in fact, a pertinent nuisance statute, and common law decisions holding that the illegal sale of alcoholic beverages is a nuisance per se). Nor has Sunland Park indicated why common law should adopt such a decree. We agree with the Bookstore's argument that the district court erred in its nuisance per se ruling because "[a]dult bookstores, signs advertising such businesses, and nude dancing are all lawful under some circumstances and not so patently offensive as to constitute a 'nuisance at all times and under any circumstances.'"

{49} We reverse the district court ruling that the Bookstore's operations, the nude dancing, and the truck sign constituted nuisances of any form. Therefore, there is no need to address the Bookstore's arguments concerning the severity of the nuisance abatement nor the issue of whether the Bookstore's contractual obligation not to re-file its federal lawsuit is sufficiently broad to bar its constitutional defenses to the nuisance claims.

**Res Judicata and Collateral Estoppel as a Bar to Consideration of the Bookstore's Constitutional Defenses**

■ {50} Because Sunland Park cannot enforce the ordinances by enforcing the Agreement, Sunland Park has not yet enforced its ordinances and the Bookstore's res judicata/collateral estoppel arguments are not ripe for our review. Addressing the preclusive effect of the federal decision in this appeal would be tantamount to an advisory opinion that would have no practical effect on the current litigation and answer a hypothetical question for Sunland Park's possible, future enforcement of the ordinances. *See In re U S West Communications, Inc.,* 1998–NMSC–032, ¶ 8, 125 N.M. 798, 965 P.2d 917 (describing "ripeness as a 'tool' of the court, which is used to . . . [avoid] rendering an advisory opinion on some future set of circumstances" (internal quotation marks and citation omitted) (alterations in original)); *Weddington v. Weddington,* 2004–NMCA–034, ¶ 18, 135 N.M. 198, 86 P.3d 623 ("Advisory opinions are those that resolve a hypothetical situation that may or may not arise."). Furthermore, having reversed the district court's rulings on Sunland Park's nuisance claims, we do not reach the question of whether the Bookstore was properly barred from asserting its constitutional defenses to those claims.

**CONCLUSION**

{51} For the reasons set forth above, we affirm the injunction ordering removal of the Bookstore's truck sign for breach of the Agreement with Sunland Park. We remand this case for recalculation of Sunland Park's punitive and consequential damages for this breach alone. We reverse the injunction ordering the Bookstore's closure on both contract and nuisance grounds and all related statutory penalty and nuisance damages awarded.

{52} **IT IS SO ORDERED.**

MICHAEL D. BUSTAMANTE, Chief Judge, and JONATHAN B. SUTIN, Judge, concur.