2007-NMCA-098

164 P.3d 1018

**William David BABER, Worker–Appellant,**

v.

**DESERT SUN MOTORS and Farmers Insurance Group, Employer/Insurer–Appellees.**

**No. 26,624.**

Court of Appeals of New Mexico.

June 14, 2007.

320

Gerald A. Hanrahan, Albuquerque, NM, for Appellant.

Miller Stratvert P.A., Kirk R. Allen, T. Aaron Garrett, Albuquerque, NM, for Appellees.

**OPINION**

SUTIN, Chief Judge.

{1} In this case, we are asked to determine whether the Workers' Compensation Judge (WCJ) erred by dismissing this case as moot without entering a compensation order. We conclude that the WCJ did err because a compensation order is the proper mechanism by which to determine the issue of whether fees should be shifted under NMSA 1978, § 52-1-54(F) (2003). We therefore reverse the WCJ's dismissal and remand for further proceedings.

**BACKGROUND**

{2} Worker William David Baber, employed by Desert Sun Motors (Employer), injured his spine at work on December 26, 2002, which required surgery on May 29, 2003, to fuse the C5, C6, and C7 vertebrae. This surgery was performed by a surgeon chosen by Employer. Following this surgery, Worker began to experience hoarseness and difficulty swallowing, which another of Employer's selected doctors noted in his records on August 15, 2003, by stating that "[Worker] has difficulty swallowing and has hoarseness from his surgical procedure." However, the same doctor noted in his December 1, 2003, records that "[Worker] had a prior cervical fusion. . . . It looks like there is some subsequent damage to the recurrent laryngeal nerve. . . . We will avoid any type of interrelationship or impairment related to that as we consider that a separate entity."

{3} Worker saw Dr. Olson, who apparently was also approved by Employer, and was diagnosed on March 15, 2004, with right vocal fold paralysis "secondary to" the spinal surgery in May 2003, and Dr. Olson indicated that surgery may be considered if other treatments did not work. On May 26, 2004, Employer's insurer, Farmers Insurance Group, denied authorization for surgery to correct the vocal cord fold paralysis, stating that "[Worker's] vocal cord fold paralysis was previously determined not to be related to the 12/26/0[2] work injury." We refer to Employer and its insurer together as "Employer." On June 10, 2004, Dr. Olson issued a letter report stating that the spinal surgery "resulted in damage to the nerve innervating his larynx[, and a]s a result of damage to the laryngeal nerve, [Worker] has a right vocal fold paralysis." This letter also indicated that Worker was being evaluated for surgery.

{4} Worker filed a Workers' Compensation Complaint pursuant to the Workers' Compensation Act (the Act), NMSA 1978, §§ 52-1-1 to -70 (1929, as amended through 2005),

in February 2005. The parties proceeded to mediation in March 2005, after which the mediator stated in a recommended resolution that "the parties were able to reach an agreement to resolve this claim." According to the recommended resolution, the terms of the agreement were as follows:

a) The parties agree that Worker's right laryngeal vocal fold paralysis is related to Worker's on-the-job injury, which occurred on December 26, 2002;

b) Worker is due all benefits as provided for under the New Mexico Workers' Compensation Act for the right laryngeal vocal fold paralysis;

c) Worker's current healthcare provider is Dr. Olson;

d) Worker will set up an appointment with Dr. Olson, who will evaluate Worker's current medical status and provide recommendations pertaining to surgery and ongoing healthcare[.]

A few weeks later the mediator issued an amended recommended resolution, indicating that it was "being issued per the parties' request." The amended recommended resolution changed only paragraph "a)," which now stated that "[t]he parties agree that Dr. Olson causally relates Worker's right laryngeal vocal fold paralysis to Worker's on-the-job injury, which occurred on December 26, 2002." Employer filed a rejection of the amended recommended resolution on May 4, 2005, and stated it did not agree that the paralysis was related to the work accident, but that it did agree that Worker could return to Dr. Olson, and that if Dr. Olson definitely related the paralysis to the work accident *and* recommended surgery, Employer would authorize and pay for the surgery.

{5} Worker saw Dr. Olson on May 11, 2005, and Dr. Olson reported that the "vocal fold paralysis [is] due to anterior cervical fusion for an injury sustained at work in 2002," and that surgery would be scheduled to address the problem. Worker then conveyed an offer of judgment to Employer on May 31, 2005, which Employer rejected. The offer stated, among other things, that

the vocal fold paralysis was causally connected to the work accident. Employer and Worker apparently exchanged additional offers of judgment, each party refusing to accept the other's offers. Nevertheless, following the foregoing events, on June 21, 2005, Employer "authorized Worker's surgery with Dr. Olson."

{6} On August 10, 2005, Employer filed a motion to dismiss Worker's complaint. The motion maintained that it was not until June 21, 2005, that Employer learned of Dr. Olson's May 11, 2005, report, which related the vocal fold paralysis to the spine surgery and thus to the initial work accident. That same date, June 21, 2005, Employer authorized the surgery with Dr. Olson. Employer argued that it received the report well after Worker's May 31, 2005, offer of judgment had expired. Worker responded to the motion to dismiss and argued that he was entitled to a compensation order, rather than a dismissal of his claims, and requested the court to direct the parties to enter into a "Stipulat[ed] Compensation Order evidencing their agreements."

{7} The WCJ granted Employer's motion to dismiss and concluded that "[a]ll benefits due Worker, except for attorney fees, have been provided to Worker by [Employer]"; "[t]he dispute in this cause is largely moot because of voluntary payment by Employer"; and "[d]ismissal of a claim is appropriate if it has been rendered moot [according to] *Montoya v. Zia Co.*, 82 N.M. 774, 487 P.2d 202 (Ct.App.1971)." The WCJ reserved jurisdiction to determine attorney fees, citing *Rumpf v. Rainbo Baking Co.*, 96 N.M. 1, 626 P.2d 1303 (Ct.App.1981), and stating that "an award of fees would be appropriate under circumstances as in this case."

{8} Worker appeals from the WCJ's dismissal of the case and argues that the case is not moot and Worker is entitled to a compensation order for two reasons: (1) under the Act, a compensation order is necessary to determine whether to shift attorney fees under the offer of judgment provision in Section 52–1–54(F)(4);[1] and (2) Worker is enti-

---

1. Worker states in his brief that he "conveyed an Offer of Judgment." Section 52–1–54(F) refers to "an offer to allow a compensation order to be taken against him." The parties use the term

322

tled to have liability for the vocal fold paralysis determined in a compensation order. We conclude that Worker is entitled to a compensation order in this case, given the language of Section 52–1–54(F)(4), and as such we reverse with instructions to enter a compensation order for use in determining the issue of whether fees should be shifted. Because we hold that a compensation order is appropriate under Worker's first argument, we do not reach his second ground for arguing that a compensation order is appropriate.

## DISCUSSION

### Standard of Review

■ {9} Whether a lower court properly dismissed a case as moot presents a question of law, which we review de novo. *Garcia v. Dorsey*, 2006–NMSC–052, ¶ 13, 140 N.M. 746, 149 P.3d 62. In the case at hand, the question of whether a claim or remedy exists or is moot requires us to determine whether a remedy exists according to the Act. *See, e.g., Archer v. Roadrunner Trucking, Inc.*, 1997–NMSC–003, ¶¶ 3, 5–14, 122 N.M. 703, 930 P.2d 1155 (relying on the sui generis nature of the Act in determining that there is no right to recovery of loss of consortium damages under the Act); *Sanchez v. Molycorp, Inc.*, 103 N.M. 148, 154, 703 P.2d 925, 931 (Ct.App.1985) (concluding that no common law right to prejudgment interest exists under the Act, as the Act is sui generis). This presents a question of statutory construction, which we review de novo. *Grine v. Peabody Natural Res.*, 2006–NMSC–031, ¶ 17, 140 N.M. 30, 139 P.3d 190.

### Section 52–1–54(F)(4) Contemplates a Compensation Order

{10} Worker argues that since he sought one hundred percent of his attorney fees because he made an offer of judgment that was refused by Employer, the WCJ should have entered a compensation order pursuant to Section 52–1–54(F), regardless of Employer's payment for the surgery. *See* NMSA 1978, § 52–5–7(B) (1993) (providing that, fol-

lowing a hearing held to determine questions at issue in a workers' compensation dispute, a WCJ is to make a decision "in the form of a compensation order"). Worker also argues that the compensation order was necessary so that his offer of judgment could be compared to the compensation order in order to determine whether Employer was liable for one hundred percent of Worker's attorney fees. *See* § 52–1–54(F)(4) (providing for one hundred percent of attorney fees). We must decide whether a compensation order is necessary in order to effectuate the purpose of Section 52–1–54(F), which was part of the 1990 amendments and was amended and clarified in 1993. *See Leo v. Cornucopia Rest.*, 118 N.M. 354, 362, 881 P.2d 714, 722 (Ct.App.1994) (holding that the 1993 amendments clarified the initial 1990 amendments of Section 52–1–54(F)).

{11} The WCJ relied on *Montoya* and *Rumpf* in holding that it was proper to dismiss the case without a compensation order while reserving jurisdiction to decide attorney fees. We conclude that *Montoya* does not control under the circumstances of this case where an offer of judgment as provided for in Section 52–1–54(F) has been made and rejected. While *Rumpf* indicates that a WCJ may reserve jurisdiction to consider awarding attorney fees, even where there is no compensation order, *see Rumpf*, 96 N.M. at 3, 626 P.2d at 1305, we do not believe that the case stands for the proposition that no compensation order is necessary to determine whether to shift fees under Section 52–1–54(F). First, we discuss *Montoya* and *Rumpf*, and then we turn to the question of the Legislature's intent in enacting Section 52–1–54(F).

{12} The WCJ relied on *Montoya* in dismissing the case as moot and in not entering a compensation order. In *Montoya*, the employer was late in making a payment, and the worker filed a workers' compensation claim alleging that the employer failed and refused

"offer of judgment," as do we in this opinion. *See Hise v. City of Albuquerque*, 2003–NMCA–015, ¶¶ 1, 9–11, 133 N.M. 133, 61 P.3d 842 (characterizing the offer as an "offer of judgment"). Similarly, Section 52–1–54(F)(1) refers to "notice that the offer is accepted," followed by

entry of the compensation order; however, the parties and this Court refer in this opinion to entry of "judgment" based on the offer. Our use of "offer of judgment" and "judgment" are not intended to displace or change the meaning of the terms used in the statute.

to make the payment. 82 N.M. at 775, 487 P.2d at 203. After reviewing the record, however, this Court noted that two payments were late and the payment, which was alleged to be in default, had been made the day before the claim was filed, and as such there was no compensation due to the worker. *Id.* This Court held that "the [workers'] compensation claim based on this default is moot because liability for those installments was extinguished by the payment." *Id. Montoya* is distinguishable from the case at hand because in *Montoya* the payment that was the basis of the claim was actually paid before the case was filed. *See id.* In this case, the compensation, namely payment for the surgery, was not authorized until after the case was filed. Moreover, Section 52–1–54(F) was enacted long after *Montoya*, and *Montoya* does not address whether a workers' compensation claim is moot due to payment of compensation after an offer of judgment has been made.

{13} We must note that Employer also relies, in the same vein as *Montoya*, on *Patterson v. City of Albuquerque*, 99 N.M. 632, 661 P.2d 1331 (Ct.App.1983), in arguing that the WCJ properly dismissed this case as moot. *Patterson* is distinguishable for similar reasons. The employer in *Patterson* was underpaying the worker by $5.38 per week. *Id.* at 633, 661 P.2d at 1332. After the worker filed a workers' compensation claim, the court informally ordered that the arrears be paid, and attorney fees were awarded and also paid. *Id.* at 633–34, 661 P.2d at 1332–33. After the employer paid these benefits, the court dismissed the case. *Id.* at 633, 661 P.2d at 1332. *Patterson* is unlike the case at hand because in *Patterson* no issues involving attorney fees remained at the time the case was dismissed and because the case was decided before the fee-shifting provision was enacted; thus, fee shifting was not at issue. Neither *Patterson* nor *Montoya* offers guidance in this case.

{14} The WCJ also referred to *Rumpf* in reserving jurisdiction to determine the issue of attorney fees. *Rumpf* addressed a very different issue than the one before us today, which was whether the worker was entitled to attorney fees where he filed suit three times, after which his employer would temporarily pay benefits, whereupon the worker would dismiss his claims. 96 N.M. at 2, 626 P.2d at 1304. *Rumpf,* also decided before the fee-shifting provision in Section 52–1–54(F) was enacted, construed what is now Section 52–1–54(E). *Rumpf,* 96 N.M. at 3, 626 P.2d at 1305. In *Rumpf,* the worker enlisted the services of an attorney to obtain workers' compensation benefits. *Id.* at 2, 626 P.2d at 1304. The attorney filed three claims. *Id.* The first two claims were voluntarily dismissed after the employer and insurer started paying benefits, but after the complaints were dismissed, the employer and insurer stopped paying benefits. *Id.* A third complaint was filed, and the employer and insurer started paying benefits again; but the worker stopped cooperating with his attorney in pursuing the complaint, and the employer and insurer filed a motion to dismiss. *Id.* The complaint was dismissed, but the attorney sought attorney fees. *Id.* The appellants argued that the Act did not authorize attorney fees without an actual award of compensation. *Id.* This Court held that a formal award of compensation was unnecessary under the language of Section 52–1–54(E), which only required that the worker "collect compensation through court proceedings in an amount in excess of the amount" previously offered by the employer. *Id.* at 3, 626 P.2d at 1305 (internal quotation marks and citation omitted). We stated that the term "proceedings" means "all the steps in a cause from its commencement to its conclusion" and that "[i]nitiation of a claim for [worker's] compensation benefits is [thus] a proceeding." *Id.* (internal quotation marks omitted). Thus, we held that the attorney was entitled to fees because the worker obtained compensation, even if only temporarily, after the attorney initiated proceedings by filing claims. *Id. Rumpf* stands for the proposition that a court may award attorney fees, even if a case is dismissed, if the requirements of Section 52–1–54(E) are met.

{15} *Rumpf,* like *Montoya* and *Patterson,* offers little guidance on the question of whether a compensation order should be issued after a party has made an offer of judgment that the other party has rejected, but the employer then pays the compensation requested by the worker. We turn now to the legislative intent in enacting Section 52–1–54(F), and address this question by looking

at the language of and the purpose behind Section 52–1–54(F).

{16} Attorney fees in workers' compensation cases are controlled by Section 52–1–54. The fee-shifting provision in subpart (F) provides:

> After a recommended resolution has been issued and rejected, but more than ten days before a trial begins, the employer or claimant may serve upon the opposing party an offer to allow a compensation order to be taken against him for the money or property or to the effect specified in his offer, with costs then accrued, subject to the following:
>
> (1) if, within ten days after the service of the offer, the opposing party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof, and thereupon that compensation order may be entered as the workers' compensation judge may direct. An offer not accepted shall be deemed withdrawn, and evidence thereof is not admissible except in a proceeding to determine costs. *If the compensation order finally obtained by the party is not more favorable than the offer,* that party shall pay the costs incurred by the opposing party after the making of the offer. The fact that an offer has been made but not accepted does not preclude a subsequent offer;
>
> . . . .
>
> (3) *if the employer's offer was greater than the amount awarded by the compensation order,* the employer shall not be liable for his fifty percent share of the attorney fees to be paid the worker's attorney and the worker shall pay one hundred percent of the attorney fees due to the worker's attorney; and
>
> (4) *if the worker's offer was less than the amount awarded by the compensation order,* the employer shall pay one hundred percent of the attorney fees to be paid the worker's attorney, and the worker shall be relieved from any responsibility for paying any portion of the worker's attorney fees.

§ 52–1–54(F) (emphasis added).

{17} Looking at the language in Section 52–1–54(F)(1), and particularly the italicized portion, it is clear that the Legislature contemplated that once an offer of judgment had been made and rejected, a compensation order would be entered. The compensation order is then compared to the offer of judgment in order to determine whether attorney fees should be shifted. § 52–1–54(F)(3), (4). Thus, the proper mechanism by which to effectuate the fee-shifting provision of the Act is a compensation order. Without a compensation order, it is unclear how the fee-shifting provision would be implemented.

{18} It would be contrary to legislative intent not to consider the fee-shifting provision when an offer of judgment has been made and rejected. We have previously stated that Section 52–1–54(F) is "intended to encourage both sides in a workers' compensation proceedings to make and accept reasonable offers of judgment by providing financial sanctions for the rejection of an offer of judgment if the rejecting party does not obtain a more favorable ruling." *Leo,* 118 N.M. at 362, 881 P.2d at 722. Considering this purpose, this Court has held that "it would undercut the policy underlying Section 52–1–54(F)(4) to allow an employer who has rejected an offer of judgment, thereby prolonging litigation and increasing the attorney[ ] fees incurred by worker, to evade the statutorily[ ]mandated shifting of attorney[ ] fees by offering to settle at the eleventh hour." *Hise v. City of Albuquerque,* 2003–NMCA–015, ¶ 9, 133 N.M. 133, 61 P.3d 842. In *Lang v. Gates,* 36 F.3d 73 (9th Cir.1994), cited by *Hise,* the Ninth Circuit Court of Appeals noted that an offer of judgment under the Federal Rule of Civil Procedure 68, which is worded substantially similar to Section 52–1–54(F), has the principle purpose "to encourage settlement and to avoid litigation," and requires the parties "to think very hard about whether continued litigation is worthwhile." *Lang,* 36 F.3d at 74–76 (internal quotation marks and citation omitted).

{19} Based on the foregoing analyses, we conclude that dismissal without a compensation order is not proper where, as here, after an unsuccessful mediation confer-

ence, an offer of judgment and acceptance of that offer do not occur to complete the settlement process as contemplated by Section 52–1–54(F)(1). An employer's eleventh-hour payment without requiring a compensation order for the purpose of addressing fee shifting under Section 52–1–54(F) would pull the teeth from the provision in the Act that allows, if not encourages, a worker to make an offer of judgment. We hold that in order to best effectuate the purpose of Section 52–1–54(F), the WCJ should issue a compensation order for use in considering the fee-shifting remedy contained in that statute after a party, as here, refuses to agree to allow judgment to be entered based on an offer of judgment.

## Matters Not Addressed

{20} We do not address Employer's argument that, even were a compensation order entered, Worker would not be entitled to one hundred percent of his fees because his offer would not be less than the amount Employer paid and would be shown in a compensation order. We leave that determination to the WCJ on remand. Further, we do not address Worker's argument that a compensation order is required for the sake of determining liability, as it would appear that that issue will, likely, if not necessarily, be addressed in relation to settlement of the compensation order to be entered.

## CONCLUSION

{21} Under Section 52–1–54(F), a compensation order is contemplated when a worker submits an offer of judgment that was refused by the employer, and the worker seeks one hundred percent of his attorney fees under Section 52–1–54(F)(4). We hold that Section 52–1–54(F) required a compensation order to be entered in the present case. We reverse the WCJ's dismissal of this case and remand for further proceedings consistent with this opinion.

{22} **IT IS SO ORDERED.**

WE CONCUR: CELIA FOY CASTILLO and IRA ROBINSON, Judges.