**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2013-NMCA-041

Filing Date: January 24, 2013

Docket No. 31,496

ZUNI INDIAN TRIBE,

       Plaintiff-Appellant,

v.

MCKINLEY COUNTY BOARD OF
COUNTY COMMISSIONERS,

       Defendant-Appellee,

and

TAMPICO SPRINGS RANCH 3000, LLC,

       Intervenor-Appellee.

APPEAL FROM THE DISTRICT COURT OF MCKINLEY COUNTY
Robert A. Aragon, District Judge

Samuel D. Gollis, Attorney at Law, P.C.
Samuel D. Gollis
Albuquerque, NM

Jane Marx, Attorney at Law, P.C.
Jane Marx
Albuquerque, NM

for Appellant

Mason & Issacson, P.A.
James Jay Mason
Gallup, NM

for Appellee

**OPINION**

**VANZI, Judge.**

**{1}** The New Mexico Subdivision Act (the Act), NMSA 1978, §§ 47-6-1 to -29 (1973, as amended through 2009), governs the subdivision review and approval process by counties. The appeals provision of the Act, Section 47-6-15(B), provides that a party adversely affected "by a decision of the board of county commissioners may appeal to the district court pursuant to the provisions of [NMSA 1978, §] 39-3-1.1 [(1999)]"—the statute governing administrative appeals. In this case, we address whether a county's approval or disapproval of a preliminary subdivision plat application constitutes a final, appealable decision for purposes of Section 47-6-15(B) of the Act. We also decide whether a timely filed appeal from a decision on a preliminary plat application is rendered moot simply because the county proceeded to approve the final plat application during the pendency of the appeal.

**{2}** We hold that a party adversely affected by a county's decision on a preliminary plat application can appeal the decision to the district court and that this appeal, if timely filed, is not rendered moot by the county's decision to approve the final subdivision plat application during the pendency of the appeal. Accordingly, we reverse the district court's ruling to the contrary and remand for the district court to consider the merits.

**BACKGROUND**

**{3}** On January 8, 2008, the McKinley County Board of County Commissioners (the County) approved a preliminary plat application submitted by Tampico Springs Ranch 3000, LLC (Tampico) for a proposed 490-home phased subdivision development. On February 7, 2008, the Zuni Tribe (the Tribe) appealed the County's approval of the preliminary plat application to the district court. Tampico filed a motion to intervene in the case, which the district court granted.

**{4}** Shortly thereafter, the Tribe filed a motion to stay enforcement of the County's decision approving the preliminary plat application to prevent Tampico from proceeding further in the subdivision development process during the pendency of the Tribe's appeal. *See* Rule 1-074(Q) NMRA (permitting the district court to stay enforcement of the agency decision under review). The district court denied the Tribe's motion, and the County then proceeded to approve Tampico's final plat application.

**{5}** Subsequently, Tampico filed a motion to dismiss the Tribe's appeal on two grounds, arguing that: (1) the district court lacked jurisdiction because the County's decision on the preliminary plat application was not a final, appealable order; and (2) the Tribe's appeal from the preliminary plat approval was rendered moot by the County's approval of Tampico's final plat application during the pendency of the appeal. The district court granted Tampico's motion, finding that the Tribe's appeal "puts forth a moot question and

2

the action complained of does not constitute a final decision." We granted the Tribe's petition for writ of certiorari to review the district court's ruling.

**STANDARD OF REVIEW**

{6} The parties agree that this case presents pure questions of law, which we review de novo. *See Santa Fe Pac. Trust, Inc. v. City of Albuquerque*, 2012-NMSC-028, ¶ 10, 285 P.3d 595 ("Finality is a question of law we review de novo."); *Baber v. Desert Sun Motors*, 2007-NMCA-098, ¶ 9, 142 N.M. 319, 164 P.3d 1018 (providing that "[w]hether a lower court properly dismissed a case as moot presents a question of law, which we review de novo"). To the extent that this appeal requires this Court to interpret provisions of the Act, we also engage in de novo review. *Hovet v. Allstate Ins. Co.*, 2004-NMSC-010, ¶ 10, 135 N.M. 397, 89 P.3d 69 (providing that "[s]tatutory interpretation is a question of law, which we review de novo").

**DISCUSSION**

**A.     Finality**

{7} The first issue we address on appeal is whether the County's approval of a preliminary plat application is a final, appealable order within the meaning of Sections 47-6-15(B) and 39-3-1.1. The Tribe argues that the district court erred in concluding that a county's approval or disapproval of a preliminary subdivision plat application does not constitute a final decision that is appealable to the district court. Section 47-6-15(B) reads:

> A party who is or may be adversely affected by a *decision* of the board of county commissioners may appeal to the district court pursuant to the provisions of Section 39-3-1.1.

(Emphasis added.) The Act does not define the term "decision" in Section 47-6-15(B), and here, the parties disagree as to whether a county's approval or disapproval of a preliminary plat application is a decision from which an aggrieved party can seek judicial review. The Tribe contends that the County's approval of Tampico's preliminary plat application in this case constituted a "decision" under Section 47-6-15(B) of the Act and that this is a "final decision" within the meaning of Section 39-3-1.1. For the reasons that follow, we agree.

{8} In interpreting Section 47-6-15 of the Act, "we seek to give effect to the Legislature's intent, and in determining intent we look to the language used and consider the statute's history and background." *Key v. Chrysler Motors Corp.*, 121 N.M. 764, 768-69, 918 P.2d 350, 354-55 (1996); *see State v. Nick R.*, 2009-NMSC-050, ¶ 11, 147 N.M. 182, 218 P.3d 868 (stating that in interpreting statutes, "we examine the plain language of the statute as well as the context in which it was promulgated, including the history of the statute and the object and purpose the Legislature sought to accomplish" (internal quotation marks and citation omitted)). "We must take care to avoid adoption of a construction that would render

3

the statute's application absurd or unreasonable or lead to injustice or contradiction." *Id.* (internal quotation marks and citation omitted).

**{9}** "The primary indicator of legislative intent is the plain language of the statute." *State v. Johnson*, 2009-NMSC-049, ¶ 10, 147 N.M. 177, 218 P.3d 863. When a term is not defined in a statute, we must construe it, giving words "their ordinary meaning absent clear and express legislative intention to the contrary." *State v. Ogden*, 118 N.M. 234, 242, 880 P.2d 845, 853 (1994). Although the term "decision" is not defined in the Act, it is ordinarily defined as "[a] judicial or agency determination after consideration of the facts and the law[.]" *See Black's Law Dictionary* 467 (9th ed. 2009); *see also Armijo v. Armijo*, 77 N.M. 742, 744, 427 P.2d 258, 259 (1967) (defining "decision" as "a determination arrived at after consideration, an opinion formed, or a course of action decided upon"). As the Tribe points out, the review and approval process for preliminary plats set forth in the Act requires a formal review process by a board of county commissioners or its delegate. *See* § 47-6-11. The Act specifically requires the subdivider to furnish documentation of various matters, such as water availability and road access, along with its preliminary plat. Section 47-6-11(B). The Act requires the board of county commissioners to seek written input in the form of "opinions" from interested parties and various state entities, including the state engineer, the department of environment, and the department of transportation. Section 47-6-11(F). The Act further requires the board of county commissioners to hold a public hearing to "weigh these opinions [if all are favorable] in determining whether to approve the preliminary plat." Section 47-6-11(G); *see* § 47-6-11(H) (describing the process to be followed where negative opinions are submitted by state agencies, tribes, or other interested parties). At the public hearing, the board of county commissioners is required to "allow all interested persons a reasonable opportunity to submit data, views or arguments, orally or in writing, and to examine witnesses testifying at the hearing." Section 47-6-14(E). And finally, the Act provides that the board of county commissioners is to render its decision on the preliminary plat "within thirty days of the public hearing at a public meeting." Section 47-6-14(F). In light of the thorough review and decision-making process set forth in the Act for preliminary plats, it is reasonable to conclude that the approval or disapproval of a preliminary plat application would constitute a "decision" under Section 47-6-15 based on the term's ordinary meaning.

**{10}** In this case, the County's approval of Tampico's preliminary plat application was consistent with the foregoing statutory scheme. The approval was issued by the Board in the form of a written resolution with incorporated final findings and recommendations submitted by the County's Smart Growth Commission. This resolution followed written input from state agencies and other interested parties, including the Tribe, as well as a series of public hearings before the Smart Growth Commission regarding Tampico's preliminary plat application. Tampico and the Tribe submitted proposed findings and recommendations following the hearings. The final findings and recommendations adopted in the resolution included consideration of several important aspects of the subdivision development and review process, such as water availability, liquid and solid waste disposal, and access. Given the nature of the written resolution and the procedural history that preceded its passage, we

4

agree with the Tribe's argument that the resolution constitutes a "decision" under Section 47-6-15.

**{11}** In addition, the statutory history of Section 47-6-15 confirms that the Legislature intended to provide for judicial review of a county's approval or disapproval of a preliminary plat. In particular, we focus on the 1995 and 2005 amendments to the Act. *See* 1995 N.M. Laws, ch. 212; 2005 N.M. Laws, ch. 139, §§ 2-3. Prior to 1995, the Act did not delineate separate review and approval processes for preliminary and final plat applications. Instead, the earlier version of the Act provided a single overarching subdivision review and approval process for a "plat." *See, e.g.*, § 47-6-2(D) (1981) (defining plat); § 47-6-3 (1973) (describing certification requirement for plats); § 47-6-6 (1979) (providing filing requirement for plats); § 47-6-11 (1977) (detailing review and approval process for a type-one or type-two subdivision); § 47-6-15 (1973) (permitting appeals from a county's approval or disapproval of a "subdivision plat").

**{12}** In 1995, the Legislature amended the Act substantially by separating the plat approval process into two distinct steps: the preliminary plat review process and the final plat review process. Specifically, the Legislature removed the broad definition of "plat" in the Act and in its place inserted definitions for preliminary and final plats. *See* § 47-6-2(E), (F) (1995). The Legislature also amended the Act to provide distinct requirements for review and approval of preliminary and final plat applications. *See, e.g.*, § 47-6-11 (1995) (describing preliminary plat approval process); § 47-6-11.3 (1995) (detailing final plat approval process); § 47-6-3 (1995) (describing requirements for final plats); § 47-6-4 (1995) (providing affidavit and acknowledgment requirements for final plats); § 47-6-6 (1995) (stating that approved final plats shall be filed with the county clerk's office and indicating that this requirement does not apply to preliminary plats). And among other changes, the Legislature further amended the Act to require the board of county commissioners of each county to adopt regulations setting forth the county's requirements for preliminary and final subdivision plats. Section 47-6-9(A)(1). Thus, the 1995 amendment to the Act reflected a clear legislative intent to create a substantively and legally distinct two-step subdivision approval process, with a portion of the Act now specifically tailored to address the preliminary plat review and approval process.

**{13}** Section 47-6-15, the appeals provision of the Act at issue in this case, was also modified in 1995. Prior to 1995, Section 47-6-15(A) (1973) read:

> Any party who is or may be adversely affected by a decision of the board of county commissioners or its delegate in approving or disapproving *a subdivision plat* may appeal to the district court.

(Emphasis added.) Consistent with the changes made to other provisions of the Act in 1995, the Legislature amended this provision by replacing the language "a subdivision plat" with "preliminary or final plat." 1995 N.M. Laws, ch. 212, § 16(A). Consequently, the language of Section 47-6-15(A) after the 1995 amendment *expressly* permitted appeals to the district

5

court from a decision of the board of county commissioner's on preliminary or final plat applications. However, the Tribe's appeal from the County's approval of Tampico's preliminary plat application in this case arose after Section 47-6-15 was amended in 2005—when the Legislature removed the "approving or disapproving a preliminary or final plat" language from the provision. *See* § 47-6-15(B) (2005). As a result of the 2005 amendment, Section 47-6-15(B) now provides that "[a] party who is or may be adversely affected by a decision of the board of county commissioners may appeal to the district court." Thus, while the 1995 version of Section 47-6-15 would have expressly permitted the Tribe's appeal from the preliminary plat application approval, the current 2005 version of Section 47-6-15 no longer includes language expressly granting a statutory right of appeal from decisions on preliminary plat applications.

**{14}** The Tribe contends on appeal that the removal of the "preliminary or final plat" language from Section 47-6-15 reflects a legislative intent to "broaden . . . the universe of county commission decisions subject to appeal." We agree with the Tribe's argument based on other aspects of the 2005 amendment to the Act. The primary objective of the 2005 amendment was to allow board of county commissioners in certain class A counties to delegate subdivision review and approval of preliminary plats and final plats to an administrative officer or to the planning commission. *See* 2005 N.M. Laws, ch. 139, § 2(D); *accord* NMSA 1978, § 47-6-9(D) (2005). While prior versions of Section 47-6-15 had only permitted appeals to the board of county commissioner from "a decision of a delegate . . . in approving or disapproving a *final* plat under summary review," the Legislature removed the qualifying language regarding final plats in 2005 to permit a much broader review, thereby allowing for appeals to the board of county commissioners from "a decision of a delegate." *Compare* § 47-6-15(E) (1995) (emphasis added), *and* § 47-6-15(A) (1998), *with* § 47-6-15(A) (2005). Subsection A of Section 47-6-15 also provides that appeals to the district court are permitted from the board of county commissioners' decision in an appeal from a delegate's action. As we have noted above, the Legislature amended Subsection B at the same time by removing the language "approval and disapproval of preliminary and final plat." *See* 2005 N.M. Laws, ch. 139, § 3; *accord* § 47-6-15(B) (2005). By removing the qualifying language from Subsection B, we conclude that the Legislature essentially confirmed that appeals from board decisions in delegation cases can be heard by district courts, thereby indicating a legislative intent to broaden the scope of appealable decisions.

**{15}** We reject Tampico's argument that the removal of the "preliminary or final plat" language from Section 47-6-15(B) served to eliminate a statutory right of appeal from decisions involving preliminary plats. If we were to employ this reasoning, we would be pressed to conclude that appeals from final plats are also not appealable since the language concerning final plats was also removed from Section 47-6-15. Such a reading is untenable if one considers that one of the primary objectives of the Act is to set forth a two-step subdivision review and approval process. The appeals provision of the Act would seemingly be rendered meaningless if no statutory right of appeal existed for decisions on preliminary or final plats. *See Int'l Ass'n of Firefighters v. City of Carlsbad*, 2009-NMCA-097, ¶ 11, 147 N.M. 6, 216 P.3d 256 ("We seek to give meaning to all parts of the statute, such that no

portion is rendered surplusage or meaningless."). We are not persuaded that the Legislature intended such a result. *See City of Deming v. Deming Firefighters Local 4521*, 2007-NMCA-069, ¶ 23, 141 N.M. 686, 160 P.3d 595 ("We . . . do not give effect to legislative intent by reading a statute in a way that would render it meaningless.").

**{16}** Tampico also appears to argue that the approval or disapproval of a preliminary plat application does not constitute a "final decision" for purposes of Section 39-3-1.1, our administrative appeals statute, or *Kelly Inn No. 102, Inc. v. Kapnison*, 113 N.M. 231, 824 P.2d 1033 (1992), and its progeny. A "final decision" is defined in Section 39-3-1.1(H)(2) as "an agency ruling that as a practical matter resolves all issues arising from a dispute within the jurisdiction of the agency, once all administrative remedies available within the agency have been exhausted." "The general rule in New Mexico for determining the finality of a judgment is that an order or judgment is not considered final unless all issues of law and fact have been determined and the case disposed of by the trial court to the fullest extent possible." *Kelly Inn No. 102*, 113 N.M. at 236, 824 P.2d at 1038 (internal quotation marks and citation omitted).

**{17}** The gist of Tampico's argument appears to be that a decision on a preliminary plat application is non-final because it does not dispose of all issues of law to the fullest extent possible. We are likewise not persuaded by this argument. Tampico offers no explanation as to why the County's decision to approve Tampico's preliminary plat application did not dispose of all issues of law to the fullest extent possible. Although Tampico's answer brief noted a number of conditions placed by the County on Tampico in the resolution approving the preliminary plat, Tampico failed to argue that these conditions somehow rendered the resolution non-final for purposes of Section 39-3-1.1. Tampico only argues that an approval of a preliminary plat is non-final because of the possibility that the final plat for the subdivision could later be denied by the board of county commissioners. However, since the County went on to approve the final plat for the subdivision at issue in this case, we decline to address this issue further. *See City of Sunland Park v. Harris News, Inc.*, 2005-NMCA-128, ¶ 50, 138 N.M. 588, 124 P.3d 566 (noting that an appellate court need not decide an issue that will have no practical effect on the current litigation and would answer only a hypothetical set of circumstances).

**{18}** Drawing on the plain language of Section 47-6-15 and its legislative history, we conclude that the Legislature intended to allow aggrieved parties the right to appeal decisions on preliminary plat applications to the district court. We hold that the district court erred in concluding that the Tribe could not appeal from the County's resolution approving Tampico's preliminary plat application. We therefore reverse the district court's ruling that the Tribe's appeal was from a non-final decision.

**B.      Mootness**

**{19}** We next address the district court's determination that the Tribe's appeal from the preliminary plat approval "puts forth a moot question." Although the district court's order

7

did not state the underlying rationale for this decision, it appears that the district court was persuaded by Tampico's argument below that the Tribe's appeal was rendered moot due to the County's approval of Tampico's final plat application during the pendency of the Tribe's appeal. We therefore address whether a timely filed appeal from a decision on a preliminary plat application is rendered moot because a board of county commissioners proceeded to approve the final plat application during the pendency of the preliminary plat appeal.

**{20}** "As a general rule, this Court does not decide moot cases. When no actual controversy exists for which a ruling by the court will grant relief, an appeal is moot and ordinarily should be dismissed." *Republican Party of N.M. v. N.M. Taxation & Revenue Dep't*, 2012-NMSC-026, ¶ 10, 283 P.3d 853 (internal quotation marks and citation omitted). The Tribe argues that its appeal was not moot because, even though the final plat was approved, the errors it has alleged regarding the County's approval of Tampico's preliminary plat application remain a live controversy. The Tribe also contends that actual relief exists in this case and that by proceeding with the subdivision development process during the pendency of the Tribe's appeal, Tampico bore the risk that the appeal could result in an unfavorable decision. In response to the Tribe's contentions, Tampico claims that the finality issue discussed above should govern the mootness dispute in this case.

**{21}** We have already determined that the district court erred in determining that the preliminary plat approval was a non-final decision. Given our reversal on the finality issue, if the Tribe's claims of error regarding the preliminary plat approval are meritorious, we conclude that the Tribe would be entitled to actual relief. Thus, the Tribe's appeal is not moot. This is the case notwithstanding the fact that, following the denial of the Tribe's motion to stay, the County proceeded to approve Tampico's final plat application during the pendency of the Tribe's appeal in the district court. Nothing in the Act prevents a subdivision developer from proceeding with the final plat review and approval process once a preliminary plat has been approved. However, where an aggrieved party has timely filed an appeal from a decision on a preliminary plat application, the subdivision developer undertakes such action during the pendency of the appeal at his or her own risk. *See City of Bowie v. Prince George's Cnty.*, 863 A.2d 976, 978 (Md. 2004) (holding that "an applicant may proceed to seek final plat approval of a subdivision . . . during the time that the preliminary plat approval remains under judicial review, but the applicant undertakes such action at his own risk that the underlying preliminary approval may be invalidated at a future time, thus, potentially voiding all subsequent governmental actions dependent on that approval").

## C.    Cancellation of Lis Pendens Notice

**{22}** As a final matter, we briefly address one remaining aspect of the district court's ruling. We observe that the district court's order dismissing the Tribe's appeal also included language cancelling the notice of lis pendens on file with the County clerk's office in this

case.[1]  This court-ordered cancellation of the lis pendens was premature and in error under existing New Mexico case law.  We have previously held that a notice of lis pendens filed in an action continues "until expiration of the time for appeal or until final disposition of the case by the appellate court."  *Kokoricha v. Estate of Keiner*, 2010-NMCA-053, ¶ 18, 148 N.M. 322, 236 P.3d 41; *Salas v. Bolagh*, 106 N.M. 613, 615, 747 P.2d 259, 261 (Ct. App. 1987).  Therefore, the district court's cancellation of the lis pendens was improper.

**CONCLUSION**

**{23}**    Based on the foregoing, we reverse the district court's order of dismissal and remand for the district court to consider the merits of the Tribe's appeal.

**{24}    IT IS SO ORDERED.**

                                                    _____

                                                      **LINDA M. VANZI, Judge**

**WE CONCUR:**

_____

**MICHAEL D. BUSTAMANTE, Judge**

_____

**CYNTHIA A. FRY, Judge**

**Topic Index for *Zuni Indian Tribe v. McKinley Cnty. Bd. of Cnty. Comm'rs*, No. 31,496**

**ADMINISTRATIVE LAW AND PROCEDURE**
Administrative Appeal

**APPEAL AND ERROR**
Standard of Review

**CIVIL PROCEDURE**

---

[1]Because the record is silent as to whether the notice of lis pendens was actually cancelled as a result of the district court's order, we can only speculate as to whether, following final plat approval, Tampico proceeded to sell lots in the subdivision to buyers who did not have notice of the Tribe's appeal to this Court.  *See D'Antonio v. Crowder*, 2011-NMCA-016, ¶ 11, 149 N.M. 420, 249 P.3d 1243 (observing that "a notice of lis pendens serves to give notice to any third parties contemplating acquiring an interest in the property in question that title to the property is subject to ongoing litigation").

Estoppel
Final Order
Mootness

**GOVERNMENT**
Subdivisions

**PROPERTY**
Lis Pendens
Subdivisions