NAKAMURA, Chief Justice (dissenting).
*274 {35} Worker failed to offer terms resolving all of the disputed matters necessary to determine whether his settlement offer was less than the compensation awarded. Accordingly, Worker is not entitled to fee shifting. Both the Workers' Compensation Judge (WCJ) and Court of Appeals were correct and should be affirmed. For these reasons, I dissent.
{36} "New Mexico has traditionally followed the American Rule by which each litigant is ordinarily responsible for its own attorney's fees." Carrillo v. Compusys, Inc. , 2002-NMCA-099, ¶ 10, 132 N.M. 710, 54 P.3d 551. Nevertheless, "it is well settled that the [L]egislature may override the American Rule by enacting a fee-shifting statute." Id. Section 52-1-54(F)(4) is an example of just such a statute. Id.
{37} "As a general rule, statutes in derogation of the common law are to be strictly construed." Albuquerque Hilton Inn v. Haley , 1977-NMSC-051, ¶ 7, 90 N.M. 510, 565 P.2d 1027. What is the consequence of this proposition for our assessment of Section 52-1-54(F)(4) ? The "purpose" provision of the Workers' Compensation Act (WCA) bears on this question. It states that
[i]t is the specific intent of the [L]egislature that benefit claims cases be decided on their merits and that the common law rule of 'liberal construction' based on the supposed 'remedial' basis of workers' benefits legislation shall not apply in these cases. The workers' benefit system in New Mexico is based on a mutual renunciation of common law rights and defenses by employers and employees alike. Accordingly, the [L]egislature declares that the [WCA] ... [is] not remedial in any sense and [is] not to be given a broad liberal construction in favor of the claimant or employee on the one hand, nor are the rights and interests of the employer to be favored over those of the employee on the other hand.
Section 52-5-1. This provision was enacted to provide our courts with guidance when asked to interpret the WCA. Garcia v. Mt. Taylor Millwork, Inc. , 1989-NMCA-100, ¶¶ 9-10, 111 N.M. 17, 801 P.2d 87. " Section 52-5-1 calls for a balanced and evenhanded construction of the [WCA]." Gomez v. B.E. Harvey Gin Corp. , 1990-NMSC-057, ¶ 9, 110 N.M. 100, 792 P.2d 1143. This conclusion stems, in part, from the fact that "[f]undamental fairness to both the workers and employers has long been a guideline." Garcia , 1989-NMCA-100, ¶ 11, 111 N.M. 17, 801 P.2d 87.
{38} What conclusions can we draw from these authorities? It seems clear that, as a general matter, we must favor neither workers nor employers when construing the WCA. In this specific case, we must consider the text of Section 52-1-54(F)(4) in a neutral and disinterested way and construe the provision in a manner that best advances the purposes and policies it was enacted to advance.
{39} Section 52-1-54(F)(4) exists "to encourage the parties to resolve their differences before hearing thus supporting the policy of judicial economy and allowing for more timely resolution of claims." Meyers v. W. Auto , 2002-NMCA-089, ¶ 25, 132 N.M. 675, 54 P.3d 79. It is designed to "require[ ] the parties to think very hard about whether continued litigation is worthwhile." Baber v. Desert Sun Motors , 2007-NMCA-098, ¶ 18, 142 N.M. 319, 164 P.3d 1018 (internal quotation marks and citation omitted).
{40} The Court of Appeals has embraced a pragmatic approach to resolve whether fee shifting shall be imposed: "The compensation order is ... compared to the offer of judgment in order to determine whether attorney fees should be shifted." Id. ¶ 17. This comparison is exceedingly straightforward; the question is simply "Did the worker ultimately get more than he asked for?" Meyers , 2002-NMCA-089, ¶ 26, 132 N.M. 675, 54 P.3d 79. Despite the rudimentary nature of this analysis, complex questions regarding the applicability of the provision have arisen.
{41} In Rivera , the WCJ declined to apply the fee-shifting provision despite the fact that the worker's offer of settlement was less than the award he ultimately received. 2011-NMCA-119, ¶ 3, 268 P.3d 525. The WCJ determined that the letter submitted by the worker as the offer "did not provide sufficient specificity or adhere sufficiently to the *275 statute to trigger the statute's fee-shifting provisions." Id. (internal quotation marks omitted). Specifically, the letter "did not mention the statute or state that the offer it contained was valid only for the ten-day period the statute requires." Id. ¶ 9. Further, it "did not refer to the statute's fee-shifting provision." Id. It also "did not state that accepting the offer would require [the e]mployer to have a compensation order entered against it." Id.
{42} For these reasons, the Court of Appeals concluded "that the [worker's] offer did not set forth any language that can support the type of agreement [the w]orker claims he intended" and further concluded that "[s]uch an omission makes the offer ambiguous as to whether [the w]orker proposed an offer of settlement or an offer of judgment." Id. The Court rightly speculated that the employer "could reasonably have concluded that accepting [the w]orker's offer to 'settle' the case would result in the simple dismissal of the action before the [WCA], rather than the formal entry of an order that the statute requires." Id. The Court held that these flaws were "fatal" and rendered the offer "incomplete" and "a nullity." Id. (internal quotation marks and citation omitted). Rivera was rightly decided but has no bearing on Worker's appeal.
{43} We are not concerned here with whether Worker's November 11, 2015 offer was a communication constituting an "offer" for purposes of Section 52-1-54(F)(4). The parties accept that Worker did convey an offer to Employer and that this offer did trigger Section 52-1-54(F)(4). The question before us is simply whether the WCJ correctly concluded that the fee-shifting provision should not apply. To answer that question, we must resolve whether Worker's offer was less than what Worker ultimately received from the WCJ's compensation award. The parties' positions as to this issue are clear. Worker contends that "the benefits [he] obtained from the compensation order ... exceeded the benefits that Worker offered to accept...." Employer counters that "the offer could not actually be evaluated in terms of dollar value" as "Worker's offer of judgment did not address the issues in the case, including MMI and disability rating."
{44} Employer's argument is correct. The basis for this conclusion is explained in the writing that follows. Here, it is necessary to emphasize that the majority's erroneous resolution of this case appears to be rooted in its belief that the sole issue before us is whether Worker's offer was "valid." See Maj. Op. ¶ 18 (citing Rivera for the proposition that fee shifting under Section 52-1-54(F)(4) shall apply where (1) a valid offer is conveyed; (2) that is less than the ultimate award; and (3) which the employer rejected, and further stating that, "[i]n this case, the parties dispute only whether Worker satisfied the first requirement by making a valid offer under Section 52-1-54(F) (2003)"). According to the majority, the validity of any offer is a question that is intertwined with the question of whether that offer is "ambiguous." See Maj. Op. ¶ 21 (citing Leonard for the proposition that an offer, to be valid, "must also address the critical issues raised in the complaint" and further stating that, "[i]f an offer of judgment does not dispose of the critical issues raised in a worker's compensation complaint, the offer is ambiguous and therefore invalid."). The consequence of this analytical framework is that the question of whether an offer is valid or ambiguous becomes a matter entirely distinct from the question of whether an offer is comparatively less valuable than the award. This is error.
{45} Employer's argument here is that the terms of Worker's offer were uncertain or incomplete and, therefore, the value of his offer could not and cannot be measured against the award to decide if fee shifting under Section 52-1-54(F)(4) is appropriate. To put it more simply: the value of Worker's offer is indiscernible and, therefore, cannot be compared to the award and fee shifting cannot be imposed. The assertion that "Employer does not dispute that Worker offered to accept less than he was subsequently awarded at trial[,]" Maj. Op. ¶ 18, is simply incorrect. Employer does dispute this fact. Additionally, the majority relies on Abeyta for the proposition that "[t]he absence of an MMI date does not preclude an opposing party from ascertaining its potential liability *276 set out in an offer of judgment[,]" Maj. Op. ¶ 23, and relies on this assertion as a major premise for its resolution of this case. This assertion and interpretation of Abeyta is incorrect.
{46} In Abeyta , the WCJ imposed the fee-shifting provision and ordered the employer to pay all of the worker's attorney fees. 2005-NMCA-087, ¶ 1, 137 N.M. 800, 115 P.3d 816. The employer appealed arguing that the WCJ erred because the worker's initial offer was "ambiguous," and "[the w]orker failed to show that his offer was less than the amount awarded in the final compensation order...." Id. The Court of Appeals proceeded to address these arguments as conceptually distinct matters, and yet (knowingly or not) acknowledged their unity in the course of its analysis.
{47} The Court of Appeals made special note of the fact that the employer and the worker in Abeyta agreed (without reservation) that the worker had not reached MMI at the time he provided his offer to the employer and, therefore, the offer did not and could not specify an MMI date. Id. ¶¶ 10,13. The Court spent some time discussing the employer's claim that this feature of the offer rendered it ambiguous as a matter of contract law, id. ¶ 11, but this aspect of Abeyta is inessential.
{48} Our Legislature's decision to enact Section 52-1-54(F)(4) and punish employers who refuse mutually advantageous settlement offers is rooted not in belief that the law of contracts must be scrupulously upheld in the workers' compensation context. Rather, the motivation behind the statute is to encourage the maximally efficient resolution of cases. Accordingly, the touchstone for determining whether fee shifting is appropriate is a simple comparison of the value of the offer and award, a comparison that allows an empirical assessment of whether an employer has wasted the worker and the Workers' Compensation Administration's time and resources. It is this realization that lies behind the essential conclusions reached in Abeyta .
{49} The Court determined in Abeyta that the lack of an agreement as to MMI given the facts presented in Abeyta posed no impediment to the application of Section 52-1-54(F)(4). Abeyta , 2005-NMCA-087, ¶ 13, 137 N.M. 800, 115 P.3d 816. The Court reasoned that it would thwart the underlying purposes of Section 52-1-54(F)(4) to hold that parties cannot bargain around a variable (MMI) both agree is indiscernible and concluded that an employer risks the imposition of the fee-shifting provision as a penalty if it declines a settlement offer that resolves all other variables for which fixed terms can be offered and that otherwise resolves the dispute. Abeyta , 2005-NMCA-087, ¶ 13, 137 N.M. 800, 115 P.3d 816. These conclusions are correct.
{50} As both parties in Abeyta agreed that the MMI date could only be prospectively assigned, the value of the worker's settlement offer turned almost entirely on the other assignable variables to the extent that they existed, i.e., TTD, WPI, medical costs, attorney fees, etc. Because the worker offered terms as to those matters, the employer refused those terms, and the worker ultimately got a better outcome as to those terms in the award, the absence of an agreement as to MMI made only a marginal difference. The locus of the "value" of the offer was the terms for the variables that could be fixed. Because the worker offered less than he got as to those variables, the offer could be deemed less valuable than the award and it was right to punish the employer for refusing the offer and prolonging the proceedings. To be sure, leaving the question of MMI open necessarily meant that the precise value of the offer in Abeyta was somewhat uncertain. But, that uncertainty was tolerable and fell evenly on both parties. This reading of Abeyta is supported by the facts presented there.
{51} The compensation award issued in Abeyta derived from a stipulation between the parties that the employer's second counteroffer fully settled the matter. 2005-NMCA-087, ¶ 5, 137 N.M. 800, 115 P.3d 816 ; see also id. ¶ 13 ("[A] compensation order entered pursuant to a settlement can be utilized when evaluating whether an offer of judgment has been met under Section 52-1-54(F)."). When comparing the offer and award, the Court of Appeals focused on the fact that the TTD rate awarded exceeded the TTD rate offered and on the fact that the *277 worker was awarded payment for medical benefits he had not requested in his offer. Id. ¶¶ 14-15. Because the parties stipulated that the offer fully settled the matter, we can infer that these were the only variables apart from MMI at issue in the case. And because the employer rejected a settlement offer with less valuable terms as to these variables, the Court correctly concluded that the worker's offer was less valuable than the compensation awarded. Worker's case is plainly distinguishable from Abeyta .
{52} Unlike Abeyta , the date of Worker's MMI has nearly always been vigorously disputed by the parties. Employer has insisted, since at least November 2013, that worker reached MMI on July 22, 2013. From Employer's perspective, Worker's healing process had already ended at the time he conveyed his settlement offer and he had reached MMI years earlier. Worker's case is unlike Abeyta in another crucial respect. Worker's MMI date was not the only term left unresolved in Worker's offer. He failed to offer terms as to his WPI rating. The record reflects that Employer has consistently contended that Dr. Balkman correctly identified Worker's WPI rating, while Worker has insisted that Dr. Balkman was wrong and that his WPI was always much higher. These disputes-the date of Worker's MMI and his WPI rating-are legally significant to whether Worker's settlement offer was less valuable than the compensation awarded. To see why this is so, we must have some general grasp of how workers' compensation benefits are calculated and the benefits calculation conducted in Worker's case.
{53} TTD payments are issued until the date of MMI. Section 52-1-25.1 (2005); Madrid v. St. Joseph Hosp. , 1996-NMSC-064, ¶ 7, 122 N.M. 524, 928 P.2d 250 ("Eligibility for the various temporary benefits provided under the [WCA] ends at the date of MMI. From this point forward, the worker is entitled to further benefits only if he or she can establish a permanent-either partial or total-disability." (citation omitted) ). "Compensation benefits, including TTD benefits, are calculated based on a worker's pre-injury 'average weekly wage.' " Baca v. Los Lunas Cmty. Programs , 2011-NMCA-008, ¶ 33, 149 N.M. 198, 246 P.3d 1070. "A worker is entitled to full TTD benefits if he is unable by reason of accidental injury arising out of and in the course of the worker's employment, to perform the duties of that employment prior to the date of the worker's [MMI]." Id. ¶ 32 (alteration in original) (internal quotation marks and citation omitted). But see Ortiz v. BTU Block & Concrete Co. , 1996-NMCA-097, ¶ 10, 122 N.M. 381, 925 P.2d 1 (stating that the WCA "provides for payment of [full] total disability benefits prior to [MMI] except in two enumerated circumstances").
{54} After MMI, a worker may be eligible for PPD benefits and, if eligible, will receive a percentage of the compensation rate in PPD payments. See Hawkins v. McDonald's , 2014-NMCA-048, ¶ 20, 323 P.3d 932 ("Once an injured worker reaches MMI, a different statutory provision of the WCA takes effect. Under Section 52-1-26(B), a worker may be eligible for PPD benefits if the worker has suffered a 'permanent impairment.' The impairment constitutes the base value for the disability benefit award."). The percentage of benefit payments increases as WPI increases. Section 52-1-26.1. "If an injured worker receives temporary disability benefits prior to an award of [PPD] benefits, the maximum period for [PPD] benefits shall be reduced by the number of weeks the worker actually receives temporary disability benefits." Section 52-1-42(B) (1990); see Gurule v. Dicaperl Minerals Corp. , 2006-NMCA-054, ¶ 12, 139 N.M. 521, 134 P.3d 808 (citing with approval the WCJ's determination "that the duration of a worker's benefit entitlement is based on a weekly scheme, rather than an absolute dollar amount, and that the rate of the benefit may vary over the duration of a worker's entitlement"). Collectively, these provisions make clear that a worker's MMI and WPI are integral to assessing a worker's total entitlement to compensation. The facts of this case illustrate this point.
{55} The WCJ determined that Worker's compensation rate is $629.11, his MMI date is December 7, 2016, his WPI is 37%, and the "benefit period is 700 weeks." Worker was awarded roughly 268 weeks (October 14, 2011 through December 7, 2016) of TTD benefits, a total of approximately $168,500 *278 ($629 a week for 268 weeks). Worker was also awarded roughly 432 weeks (the remainder of the 700 week benefit period) of PPD payments at eighty-five percent (thirty-seven percent WPI plus forty-eight percent modifier points) of the compensation rate, or approximately $231,000 (eighty-five percent of $629, a total of $535 a week for 432 weeks). As Worker's MMI extended outward, he received additional weekly TTD payments. As Worker's WPI increased, his weekly PPD payment rate increased. To see the significance of this observation, it is useful to compare what Worker would have received had the WCJ accepted Dr. Balkman's findings. This comparison is readily achieved as Worker's attorney offered this very comparison in his application for attorney fees with the Workers' Compensation Administration in an attempt to show just how much additional benefits he obtained for Worker.
{56} If Dr. Balkman's July 22, 2013 MMI determination governed, Worker would have received $629 per week in TTD payments for only ninety-two weeks, a total of (approximately) $58,000. This is nearly $110,500 dollars less than what Worker received in light of the fact that the WCJ accepted Dr. Reeve's findings. For PPD payments, if we assume the modifiers remained forty-eight percent and then added only thirteen percent WPI to reflect Dr. Balkman's revised WPI determination, Worker's weekly PPD payment would have been only $384 per week (sixty-one percent of $629). This is $150 less per week than what Worker was awarded.
{57} The WCJ was aware of the significance of MMI and WPI when he concluded that Worker was not entitled to the application of Section 52-1-54(F)(4). The WCJ specifically stated that Worker was not entitled to fee shifting because his offer did not "address material facts and issues in dispute and determined at trial." The WCJ's conclusion can be translated this way: because Worker failed to offer terms resolving all of the disputed matters bearing on Worker's entitlement to compensation benefits, Worker is not entitled to fee shifting under Section 52-1-54(F)(4) because it was (and still is) impossible to determine whether Worker's settlement offer was less than the compensation awarded. This reasoning is sound.
{58} To hold, as the majority does, that an employer should be punished for refusing a settlement offer the value of which is indiscernible and which left unresolved crucial matters relating to benefits to which Worker claimed he was entitled and which the parties vigorously disputed from nearly the inception of the proceedings is error. Our Legislature could not have intended this result. Indeed, in the wake of this case, employers will likely be confronted with some regularity by a Hobson's choice: accept uncertain settlement offers that do not propose terms sufficient to calculate liability, or reject such offers and run the risk of the fee-shifting penalty. This outcome cannot be said to reflect a construction of the WCA that is balanced and even handed to workers and employers.
{59} The majority justifies its conclusion on two closely related grounds. First, it states that "[t]he absence of an MMI date does not preclude an opposing party from ascertaining its potential liability set out in an offer of judgement" and cites Abeyta to support this claim. Maj. Op. ¶ 23. From this assertion, the majority concludes that "Employer was well informed as to the scope of its liability." Id. ¶ 25. Second, the majority contends that "[h]ere, although Employer points to uncertainty about the date of MMI and the rate of PPD as sufficient to invalidate the offer of judgment, these are not critical issues if the worker's healing process is incomplete." Id. ¶23. This point is repeated in later discussion. See id. ¶32 ("[A]s we explained in the previous section, an offer of judgment need not establish the date of MMI or amount of PPD benefits if the healing process is still underway."). I do not agree with these claims.
{60} Where a worker declines to offer terms as to the date of MMI, the degree of WPI, or any other term essential to calculating a Worker's entitlement to benefits, the opposing party will not be able to ascertain its liability because it will not be able to assess the value of the offer. The majority's assertions to the contrary are incorrect, and its reliance on Abeyta misplaced.
*279 {61} Abeyta is the exception, not the rule. As already noted, it holds that where both parties agree that the MMI date is unknowable but the parties nevertheless settle all other material variables bearing on benefit entitlement, the absence of a specified MMI date produces only a tolerable range of uncertainty. This case is nothing like Abeyta , and the preceding review of what Worker would have received with an earlier MMI date and a lesser WPI rating reveals that Worker's failure to offer terms created meaningful uncertainty that cannot in any way be described as tolerable.
{62} It is possible that the majority believes this case is like Abeyta because the district court ultimately found that Worker reached MMI on December 7, 2016-one year after Worker submitted his settlement offer. This finding establishes that the WCJ did indeed find that Worker was healing at the time he submitted his settlement offer. But the WCJ's findings cannot supply the basis for the imposition of a penalty where no offer fully resolving the dispute is presented before the findings are issued. To put the point slightly differently, the trial at which the WCJ made its findings about Worker's MMI and WPI was not unnecessary. Worker, having failed to issue a settlement offer that would sufficiently resolve the disputed issues, cannot point to the outcome of trial and complain that Employer should now pay a penalty for refusing terms and unnecessarily prolonging the litigation. Terms were not offered. The litigation was not unnecessarily prolonged.
{63} Worker contends that this thinking is error as it necessarily requires him "to predict an unknown date of MMI and to prematurely assess impairment and modifier values." This contention ignores the fact that medical professionals are routinely asked, in the course of litigation, to make predictions. In fact, the doctor whose opinion was central to the dispute in Abeyta made a prediction that has doubtless significance here: "Dr. Marchand predicted an MMI date at a deposition taken two days before [w]orker's offer, and by the time of the hearing on attorney fees, it turned out that the MMI date was as Dr. Marchand had predicted." Abeyta , 2005-NMCA-087, ¶ 16, 137 N.M. 800, 115 P.3d 816. Moreover, the very question whether a worker has reached MMI is itself predictive. See Smith v. Cutler Repaving , 1999-NMCA-030, ¶ 12, 126 N.M. 725, 974 P.2d 1182 ("[W]hether a worker has reached MMI turns on proof of a reasonable medical probability of future recovery and lasting improvement."). To the extent a worker must make predictions about MMI or any other matter bearing on the worker's entitlement to benefits in order to present a settlement offer the value of which an employer can assess, requiring the worker to make those predictions places no unusual burden upon them.
{64} Leonard is the case to which the present matter bears the most resemblance. There, the worker suffered two injuries to her back while working for two employers and filed two workers' compensation claims that were consolidated. 2007-NMCA-128 ¶¶ 1, 5, 142 N.M. 605, 168 P.3d 177. The worker made an offer to the employers that was rejected, and she later prevailed at trial. Id. ¶¶ 5-7. Afterwards, the worker requested that the fee-shifting provision be applied and the two employers pay 100% of her attorney fees. Id. ¶ 8. The WCJ rejected this request on grounds that the offer did not address "the relative responsibilities of the [e]mployers ... to pay for surgical medical care for the [w]orker." Id. ¶ 23.
{65} The worker appealed and argued that the WCJ's reasoning was flawed because "her offer of judgment, if accepted, would have disposed of all issues between her and the employers." Id. ¶ 24. She pointed out "that neither of the employers filed a cross-claim against the other and that the employers would have had the option to move for post-litigation proceedings for reimbursement, if necessary." Id. The worker added that "the legislative intent of Section 52-1-54(F) is to encourage settlement in workers' compensation cases and, in light of that purpose, [w]orker's offer of judgment was not without legal effect merely because it left some issues unresolved." Id. The Court of Appeals was not persuaded.
{66} It acknowledged that the worker was correct that "the purpose of Section 52-1-54(F) is to encourage settlement," but determined *280 that the worker failed to proffer an offer that specified each employer's liability and, therefore, "cannot be said to provide a more or less favorable outcome for the employers." Leonard , 2007-NMCA-128, ¶ 25, 142 N.M. 605, 168 P.3d 177. In other words, the worker's offer could not be compared with the award to determine if the offer was of lesser value. Worker's case is analogous to Leonard .
{67} Worker's offer failed to provide terms for specific, disputed matters relating to his entitlement to benefits. Such an offer provides no basis for comparison to the compensation award subsequently entered. Accordingly, Worker is not entitled to have Employer pay his attorney fees.
{68} Worker cannot protest that Employer needlessly prolonged this litigation where Worker failed to offer terms fully settling the benefit entitlement issues. The WCJ did not err when he declined to impose Section 52-1-54(F)(4). The Court of Appeals correctly affirmed the WCJ, and the Court of Appeals decision should be affirmed.